## Galloway v. Kelley, et al.

(Decided June 25, 1926.)

### Appeal from Warren Circuit Court.

1. Easements.—Owner of lot, to which passway is appurtenant, cannot extend privilege of using it to any other property, even if owned by himself.

2. Easements.—Parties to deed creating private passway and their grantees have exclusive right to use it, and neither can grant privilege to third person without other's consent.

GEORGE H. GALLOWAY and N. P. SIMS for appellant.

THOMAS, THOMAS & LOGAN and RODES & HARLIN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The right to use a passway in the city of Bowling Green is the subject of this litigation. Mrs. John M. Galloway instituted the action and is now appellant, and Mrs. Alma L. Kelley and her husband were made defendants, and are now appellees.

The lower court decided that Mrs. Galloway was not entitled to use the passway in question and dismissed her cause. The parties each own property between State street and Chestnut street near Twelfth street. Its relation to the streets and the passway in question is illustrated by the following map:

Mrs. Galloway owns the lot and residence designated as "X" on the map; while Mrs. Kelley owns the residence upon lot designated as "Y." The lines 10 to 11 are at the rear of their respective lots. The distance from State street to Chestnut street is 400 feet, and their lots were originally 200 feet deep. Lot designated by figures 1, 2, 3, and 4 was originally owned by Dr. J. N. McCormick, the residence being located about the center thereof. About the same time the two lots now marked "X" and "R," respectively, were owned together by another person and were some sixty feet wide on State street and extended all the way through to Chestnut street. At that time one Posey owned Lot "Y," and one Russell owned lot "R." As Russell desired to build two bungalows on his lot near Chestnut street, it was necessary for him to acquire more ground to make his lot wider, and he purchased 26 feet of ground from Posey along the line next to the Russell lot. The deed, after describing the lot conveyed and warranting title, contains this sentence:

> "There is included in this conveyance the right of way for a distance of 100 feet back from the front over a driveway between the residence lot of said Posey and the lot herein conveyed and thereafter the said Russell gives one-half (½) of the driveway to the rear, but the said Posey retains complete control over same."

The driveway mentioned in that deed extends from "A" on Chestnut street, a northwestern course, along the line of the Posey lot 100 feet to a point near the rear of the Saint James apartments, from which point the passway was extended by the deed in the same direction to the rear of the property, then owned by Posey and Russell, the contracting parties, one-half of the driveway to be located on the lands of each. Some time later and before the erection of the Saint James apartments Dr. McCormick purchased the Russell Lot marked "R," and later sold the front thereof to the Saint James Realty Company, and the apartments were built upon that lot, McCormick retaining the rear part of the lot from "B" toward "D" on the map, which was about 42 feet wide and 86 feet long, and is included in the lines D, to 11, 12, B, to D. At that time McCormick owned the big adjoining lot upon which his residence stood. While the titles

stood thus McCormick and his wife entered into a contract and deed with L. A. Glaze, who then owned the lot marked "X," whereby McCormick acquired from Glaze a ten foot strip at the rear of the Glaze lot extending from 11 to 12, in consideration of which the McCormicks undertook to convey to Glaze the right to use the passway not only from "A" to "B," but from "B" by the line indicated through the "horse lot" to a point near 11, so that Glaze and his successors in title might have the right and privilege of passing in and out over the passway from "A" by "B" to the lot "Y." After reciting the exchange and some of the conditions thereof, and describing the property, the deed of date February 21, 1920, says:

"Now, therefore, in consideration of said conveyance (of the ten foot strip) the parties of the first part do hereby bargain, sell and convey unto the party of the second part, an interest in and to the right of way over a driveway from Chestnut street through the lot of R. C. Posey upon the conditions as conveyed to the parties of the first part by J. N. Russell by deed dated September 2, 1909. . . . Said driveway extending and leading to the rear of the premises now owned by the party of the second part at 1134 State street. It is agreed and understood by the parties hereto that the party of the second part shall have the right of way over said driveway as expressed in said deed from said Russell. Said driveway leads into a barn lot on the premises of the parties of the first part and in the rear of the property of the party of the second part, and it is understood and agreed that the party of the second part, and his heirs and assigns shall at all times have free access to and through said lot as a driveway and may enter same from his premises to or through his coal house or at any other point hereafter agreed to by the parties hereto."

The deeds in the chain of title from Posey down to that under which Mrs. Kelley holds refer to the passway, all being based upon the reservation contained in the Posey deed, which reservation we have first above copied. Lot "X" was not owned by McCormick at the time of the making of the deed to the right of way to Glaze.

The right of way from "A" to "B" and on to the rear of the Posey and Russell properties was and is not appurtenant to lot "X," and lot "X" had no right as a dominant estate to pass over the right of way out by way of "B" to "A," unless that right was obtained under the McCormick deed. The passway from "A" to "B" ran straight to the rear of the lot at figure 12, and did not, therefore, touch lot "X." However, the right of way granted by the deed of McCormick to Glaze ran about as indicated on the map as "Galloway's passway," beginning at "gate" near "C," and ending at "gate" near "11." That part of the passway was created by the McCormick deed. While McCormick had a right to use the passway from "A" to "B" because at that time he owned lot "D," 11, 12, B, which was a part of the Russell lot to which the passway was appurtenant, he had no right as a matter of law to extend the privilege of using the passway from "B" to "A" to any other property, even that owned by himself; and although he had the power to grant a passway through his horse lot, indicated on the map, he could not grant the privilege to the owner of lot "X" to pass over the way from lot "X," as indicated on the map through "horse lot" to the point "A." McCormick's right to the use of the passway from "A" to "B" was limited to the needs of the "horse lot" only, and except for his ownership of the "horse lot," McCormick had no right to use the passway from "A" to "B." The passway was a private one created for the use and benefit of Posey and Russell and their respective grantees, and for no one else, Posey retaining complete control over the passway. To allow Mrs. Galloway to use the passway from "B" to "A" would put upon that easement an extra burden which was not intended by the original parties to the deed creating the passway. These parties had the exclusive right to the use of that easement and neither could grant the privilege to a third person except with the consent of the other part-owner of the easement. This rule was laid down in the recent case of Perkins v. Jones, 215 Ky. 189, where we said:

"This gives each of the lot owners the right to use the road as an appurtenance of his lot, but it does not give him the right to increase the servitude by using the road for the benefit of other property.

. . . The law is well settled that an easement that is appurtenant to one lot or tract cannot be used in connection with another lot or tract, although the other lot or tract belongs to the owner of the dominant estate to which the easement is appurtenant, and although the two tracts or lots adjoin. The owner of the dominant estate cannot increase the burden on the servient estate by the grant of an easement."

Another recent case in point is that of Cleve v. Nairin, 204 Ky. 342, where it was, in substance, held that an easement created for the benefit of a particular lot or parcel of land cannot be enlarged or extended so as to benefit other lots or land to which the easement was not appurtenant, it being said that "the purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement was created by grant, reservation, prescription or implication." 9 R. C. L. 768; 41 L. R. A. (N. S.) 1107; French v. Marstin, 24 N. H. 440; 57 Amer. Dec. 294.

The trial court correctly adjudged the rights of the parties.

Judgment affirmed.