# Kentucky Pipe Line Company v. Hatfield.

(Decided May 20, 1927.)

(Rehearing Denied, with Modification, March 23, 1928.)

## Appeal from Floyd Circuit Court.

1. Mines and Minerals.—Under lease to operate and produce oil, gas, and gasoline, with rights of way and servitudes for pipe lines incident to and convenient for economic operation of land alone and conjointly with neighboring lands, the servient estate was granted to be used only to enable grantee to carry out purpose of lease, and was not assignable by grantee to a third person to construct pipe lines to convey gas from its lands without development on land leased in connection therewith.

2. Easements.—A right of passway over lands of another owned by an adjoining landowner, but which is appurtenant to the land so owned by him, cannot by him be extended to or conveyed to another without the consent of the owner of the servient estate, nor can he transfer his right of passway appurtenant to his property without conveying the property.

3  Easements.—One receiving from grantor in connection with title to land, title to easement, or passway on other lands of grantor, whereby passway becomes appurtenant to land conveyed, cannot grant right to any other to use that passway except in connection with conveyance to which it is appurtenant.

4. Easements.—A servient estate, granted in connection with a dominant estate, and to be used as part of and in connection with that estate, cannot be severed therefrom.

5. Easements.—If plaintiff acquired interest in land burdened with rights and interest theretofore granted by conceded half owners thereof to develop oil and gas, she cannot recover as for a trespass thereon by lessees or assignees.

6. Damages.—Where pipe line was laid through 25-acre tract of bottom land for 760 feet, with comparatively little damage to balance of the tract, and ditch therefor covered less than one-third of an acre, and entire tract was assessed for taxation at less than amount of verdict, $500 damages for wrongful entry and construction of pipe line held excessive.

JOSEPH D. HARKINS for appellant.

COMBS & COMBS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee is the owner of a tract of land of about 25 acres on Bull creek in Floyd county which she inherited from her father. She is likewise the owner of the sur-

face of an adjoining tract of land known as the Moore land of a larger acreage. In the latter tract she claims to own one-half of the mineral interest in addition to the surface, but it is disclosed that the W. S. Harkins estate claims the whole of the mineral interests therein, and that there is a suit pending between the parties to determine the title to the mineral interest.

On the 30th of March, 1922, plaintiff executed and delivered to the Kentucky Coke Company an oil and gas lease on the 25-acre tract, wherein the purpose of the lease was recited as—

"for the sole and only purpose of operating for and producing oil, gas, gasoline, together with rights of way and servitudes for pipe lines, telephone and telegraph lines, structures, houses, and buildings and all other rights and privileges necessary, incident to and convenient for the economic operation of this land alone, and conjointly with neighboring lands for oil, gas, and gasoline."

Thereafter the Kentucky Coke Company sold and transferred this lease and all rights under it to the Ivyton Oil & Gas Company, which latter company owned several oil and gas leases in that immediate vicinity, including one from the Harkins people on the Moore tract, of which plaintiff owned the surface and claimed a one-half undivided interest in the mineral, but in which the Harkins people claimed title to the whole mineral, and plaintiff did not join in the Harkins lease. This, however, is an action at law by appellee (plaintiff) against the Kentucky Pipe Line Company, asking damages because, as alleged, that company had wrongfully, and without right and without her consent, entered upon her said two tracts of land and built and constructed across the same a pipe line extending about 1,000 feet over the lands inherited by her from her father, and about 250 feet over the Moore tract of land to which she asserted title to the surface and one-half of the mineral.

The answer denied the construction of the pipe line across the lands without authority, or without her consent, and in a second paragraph set up the fact that she had leased the 25-acre tract on the 30th of March, 1922, to the Kentucky Coke Company, granting the rights of way above set forth, and alleging that thereafter the Kentucky Coke Company transferred and assigned all its rights to the Ivyton Oil & Gas Company, and that still

later the Ivyton Oil & Gas Company had executed and delivered to the defendant pipe line company, an assignment of its rights of way, easements, and privileges to lay and construct and maintain the pipe line across her said property, but did not allege that the Ivyton Oil & Gas Company assigned to the pipe line company its oil and gas rights under the lease from the plaintiff, but only that it had assigned its rights of way for pipe line purposes across the land. As to the Moore tract, they allege that the Harkins estate is the owner of the coal, oil, gas and minerals on, upon, and under that tract of land, together with convenient and necessary rights of way for the purpose of transporting said mineral and mineral products therefrom, or from any other land owned or thereafter acquired by the Harkins estate, and that the Harkins estate had made, executed and delivered to the Ivyton Oil & Gas Company an oil and gas lease on that tract of land, and granted to the Ivyton Oil & Gas Company certain rights of way under which the pipe line through the same was constructed by defendant.

The issues as finally made up conceded that the Harkins people owned a one-half undivided interest in the minerals on the Moore tract.

No well has ever been drilled on the 25-acre tract so leased by plaintiff, but one well has been drilled on the Moore land under the lease executed by the Harkins people to the Ivyton Oil & Gas Company; but that well has never been attached to the pipe line although it is a producing gas well, presumably for the reason that the title to the minerals are in controversy in a suit pending between the plaintiff and the Harkins people. But it is disclosed that the pipe line so constructed by defendant across these lands is in use for transporting gas over plaintiff's lands from other leases in the locality.

On a trial, the plaintiff recovered a verdict for $500 in damages, and from a judgment entered thereon this appeal is prosecuted.

There are three major questions presented:

(1) Did the assignment to the pipe line company by the Ivyton Oil & Gas Company of the pipe line easement embraced in the lease executed by plaintiff carry the right to exercise that easement by the pipe line company when the oil and gas privileges contained in that lease remained in the Ivyton Oil & Gas Company? In other words, may the pipe line easement be severed from the oil and gas privileges?

(2) As it is conceded the Harkins people had a one-half undivided interest in the mineral rights on the Moore tract, together with certain pipe line privileges granted, was it proper to permit evidence as to the injury to the Moore tract suffered by plaintiff, and authorize in the instructions a recovery therefor?

(3) Was the $500 recovery excessive?

Obviously the oil and gas constituted the dominant estate granted in the lease executed by plaintiff, and the easements or rights over the surface was a servient estate and granted as merely surface rights to be used by the grantee in the exercise of the right to take and transport the oil and gas when found; that is to say, the surface easements so granted were appurtenant to, and to be used and exercised in connection with, the right to explore for and reduce to possession the dominant estate granted. This servient estate therefore so granted to be used only for the purpose of enabling the grantee to carry out the main purpose of the lease is a part of and appurtenant to the dominant estate so granted, and cannot be separated from it; it appearing that there had actually been no development nor well drilled on the tract of land embraced within the lease. So far as these surface easements are concerned, the grant is for such rights and privileges as are, "incident to and convenient for the economic operation of this land alone, and conjointly with neighboring lands." Clearly the grant of the surface easements was appurtenant to, and to be used in connection only with, either the operations on this tract alone, or on operations upon this tract jointly with other tracts in the neighborhood. It was not in contemplation that even the grantee in the lease might have constructed over plaintiff's lands pipe lines to convey gas from the lands of other people without any development upon her lands in connection therewith.

It has long been the rule that a right of passway over the lands of another owned by an adjoining land-owner, but which is appurtenant to the land so owned by him, cannot by him be extended to or conveyed to another without the consent of the owner of the dominant estate over which the passway runs, and that he cannot sell and convey his right of passway which is appurtenant to his property without conveying the property to which it is appurtenant. Galloway v. Kelley, 215 Ky. 423, 285 S. W. 200. Nor can one who receives from a grantor title to a tract of land, and in connection therewith receives title

to an easement or passway on other lands of the grantor to him and his heirs and assigns, whereby the passway becomes appurtenant to the land so conveyed to him, grant or give the right to any other to use that passway except it be in connection with a conveyance to which it is appurtenant. Wood v. Woodley, 160 N. C. 17, 75 S. E. 719, 41 L. R. A. (N. S.) 1107 and note. In other words, a servient estate granted in connection with a dominant estate, and to be used as a part of and in connection with that estate, cannot be severed therefrom.

It results that the effort of the Ivyton Oil & Gas Company to assign the surface easement granted by plaintiff and retain itself the title to the dominant easement granted, was ineffectual and passed no title.

As to the second question the answer alleges that the Harkins estate was the owner of all the mineral rights in the Moore tract, "together with the convenient and necessary rights of way for the purpose of transporting said mineral and mineral products from or out of said land, or from out of any other land heretofore owned or hereafter acquired" by the Harkins estate. It is then alleged that the pipe line in question was erected across that land pursuant to the rights so owned by the Harkins estate and granted by it to the Ivyton Oil & Gas Company.

The plaintiff's reply denies that the Harkins estate owned the coal, oil, gas and minerals in, upon, or under said tract of land, or any part thereof, together with the necessary or convenient rights of way for the purpose of transporting same out of said tract of land, or any other tract theretofore owned or thereafter acquired by them, and denies that the pipe line across same was constructed under or pursuant to the terms of such grant to the Harkins estate. However, the reply then expressly admits that the Harkins people "owned an undivided one-half interest in the coal, minerals, oil and gas, and mining rights and privileges in tract No. 2 described in her petition herein," but then alleges that the plaintiff is the owner of the surface and timber, "and the other undivided one-half interest in said coal, mineral, oil, gas, and mining rights and privileges."

So that the pleadings admit the ownership by the Harkins people of one-half of the minerals and one-half of the mining rights and privileges, and assert title in the plaintiff to the other half of the minerals, and the other half of the mining rights and privileges. It is disclosed

in the lease by the Harkins estate to the Ivyton Oil & Gas Company that the Harkins interest in the minerals and the mining rights and privileges was by lease dated November 10, 1908; but it is not disclosed in the record when appellee acquired her interest in the John Moore tract, nor were any of these records introduced in evidence.

If, therefore, it should appear upon another trial that the Harkins people owned and acquired, before the appellee acquired her interest in that tract, the full mining rights and privileges, even though they only acquired one-half of the mineral right itself, then the plaintiff took the estate granted her burdened with the rights and easements theretofore granted to Harkins, and should not recover in this action for any alleged trespass by persons having authority under the terms of the Harkins grant. If, however, the evidence should show that the Harkins people only acquired one-half of the mineral right, and at the same time acquired only one-half of the mining rights and privileges, then the court in its instructions will be governed accordingly.

The pipe line was laid through the bottom lands on tract No. 1 for a distance not exceeding 760 feet, and the evidence shows that the damage to the balance of that tract was comparatively little. The ditch in which the pipe was laid was a narrow one, into which was placed a four-inch pipe; it was covered over and was of a depth of about 18 inches through the cultivating lands. The ditch actually covered less than one-third of an acre. A short time after it was laid and the earth settled, the fact that it was there was hardly perceptible. There was slight damage only to the growing crops or vegetation. The property, while probably worth considerably more than that, had been assessed for taxation in one or more years at less than the amount of the verdict.

While we are not inclined to minimize the value of appellee's property, we do not accept without reservation the estimates of witnesses as to its value just before and just after the construction of this pipe line.

On the whole we are of the opinion that the recovery of $500 for the injury to the 25-acre tract is excessive in the light of the facts appearing in the record.

On another trial the court will eliminate all evidence of damage to tract No. 2 if it should be found that the Harkins estate had a grant of full mining rights and privileges in the tract at the time appellee acquired her interest therein, and will modify its instructions accord-

ingly. It will also eliminate in instruction No. 1 its reference to the cash value of the property.

We perceive no other reversible error, but, because of the errors indicated, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.