## City of Harlan v. Blair, Sheriff.

(Decided Oct. 27, 1933.)

ELMON MIDDLETON for appellant.

J. B. CARTER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The question presented upon this appeal is one purely of law. The facts are not in dispute, but are as alleged in appellant's petition and as alike recited in briefs of counsel.

From these, it appears that in January, 1933, the appellant, city of Harlan (plaintiff below), filed in the Harlan circuit court its petition in equity against the appellee, J. H. Blair, sheriff of Harlan county (defendant below), seeking to enjoin him from collecting taxes from the city of Harlan on the Harlan water plant and properties for that portion of the year 1932 beginning August 20 and ending December 31, 1932, and to have the city of Harlan's water plant adjudged exempt from liability for taxes for that proportional period of said year covered by the city's acquisition and ownership of the water plant, as a public property used for public purposes by it, and to enjoin the sheriff from selling its water plant for the state and county taxes due for such period of that year.

Further, it appears that the appellant, city of Harlan, purchased on August 20, 1932, from the Harlan Public Service Company, its water plant, for the purpose of operating same as a municipal water plant, and that the proceeds derived from its operation were to be applied to the payment of its bonds issued for the plant and any surplus upon the general indebtedness of the city.

At the time of the city's purchase of this water plant on August 20, 1932, as stated, the taxes for the year 1932, due the state and county, upon it were in the hands of the defendant sheriff of Harlan county for collection. The city tendered to the sheriff that portion of these taxes due for the year 1932 which would represent the proportional part of the state and county taxes due upon the water plant property for that year covering the period from January 1, 1932, to August 20, 1932, and which amount had been turned over to the city by its vendor for such purpose, with the request that it be given credit by such amount on the total amount of taxes assessed against the water plant for the year 1932, and claimed exemption from paying that further part of the assessed 1932 tax as represented the proportional part thereof covering its ownership of the property from August 20 to December 31 of said year. The sheriff, however, refused to accept and credit this amount tendered by the city on the tax bill against the property or to release plaintiff from the remainder.

Plaintiff alleged in its petition its continued willingness to pay defendant this proportional part of the said taxes up to the time of its acquirement thereof on August 20, 1932. In its petition it further alleged that its vendor, the Harlan Public Service Company, had no other property of any kind in the state of Kentucky, out of which defendant could secure the payment of these taxes, and that he was about to and would enforce collection of same, as due for that portion of the year from August 20 to December 31, 1932, by the sale of its water plant, unless enjoined from so doing; wherefore plaintiff prayed that defendant be permanently enjoined from collecting such proportionate part of the 1932 county and state tax covering the period of its ownership of the plant, and that the city of Harlan and its water plant be adjudged exempt from taxation

for said period and thereafter, while owned and operated by the city for public and municipal purposes.

To this petition, the defendant, here the appellee, filed a general demurrer, in which he insisted that the assessment against the Harlan Public Service Company's water plant had been made as of July 1, 1931, for taxes for the year 1932, and that a lien for the taxes for the entire year 1932 had already attached to the plant at the time of its purchase in August, 1932, by the city, and that the lien could not be defeated; that the city bought the plant, subject to such tax lien; that the water plant stood for the entire 1932 tax; and that the tax for the portion of the year 1932, from August 20 to December 31, must be paid by the city or the property sold to satisfy said tax, even though the Harlan water plant property was owned and operated by the appellant city during such period.

The learned trial court took the position that the lien for the 1932 tax had already attached to the water plant at the time of its purchase by the city, and that, although it thereby then became public property, used for public purposes, and as such was exempt from taxation, the lien for state and county taxes, existing at the time of its purchase against the property, would follow it into the hands even of such tax exempt purchaser.

Such being the view and holding of the trial court, it sustained appellee's general demurrer to the petition, when, the appellant declining to plead further, its petition was dismissed.

From this judgment sustaining the demurrer and dismissing appellant's petition this appeal results.

It is agreed and conceded by the parties hereto that, under the provisions of section 170 of the Constitution and of section 4026 of the Statutes, the water plant, when acquired and purchased by the appellant city as a public property, to be used for public purposes, became tax exempt, as they have repeatedly by this court been construed and applied to municipally owned water plants. See section 170 of the Constitution, 1930 Edition Carroll's Kentucky Statutes, and footnote thereunder entitled "Water Works" on page 96, in which the cases of Commonwealth v. City of Covington, 128 Ky. 36, 107 S. W. 231, 32 Ky. Law

Rep. 837, 14 L. R. A. (N. S.) 1214, Commonwealth v. City of Newport, 107 S. W. 232, 32 Ky. Law Rep. 820, and District of Highlands v. City of Covington, 164 Ky. 815, 176 S. W. 192, so holding, are cited, and also certain earlier cases holding the contrary doctrine are cited as overruled, and the right to tax exemption extended to a city's waterworks system, as being a public property used for public purposes.

As to the next question relating to the procedure by injunction employed herein, it is sufficient to say that the rule is well established that a court of equity has jurisdiction to enjoin proceedings for the enforcement or collection of a tax on property which is legally exempt from its payment. 61 C. J. 410, sec. 427; Ryan v. City of Louisville, 133 Ky. 714, 118 S. W. 992; City of Lancaster v. Pope, 156 Ky. 1, 160 S. W. 509, Ann. Cas. 1915C, 752. In the last-named case the court held an injunction to be the proper remedy to prevent the collection of an illegal tax, and, further, that an injunction bond is not required where a perpetual injunction is granted after final hearing on the merits.

However, the difficult and main question here before us is whether or not the city of Harlan is entitled to exemption from the payment of such part of the state and county tax lien, outstanding against the water company's property for collection at the time of the city's purchase thereof for use as a municipal water plant, from the date of its purchase or acquisition on August 20, 1932, to December 31, 1932; that is to say, whether it became exempt from the payment of such proportional part of the 1932 tax as was covered by the city's ownership thereof during such period.

We have been unable to find any case wherein this question has been decided by this court. In volume 26, R. C. L. 400, sec. 358, it is in part stated:

"It sometimes happens * * * that land in the hands of private persons and subject to taxation when it is assessed is before the tax is paid acquired by a corporation the property of which is exempt from taxation, and the question then arises whether the lien can be enforced and the land sold for nonpayment of the tax. When the corporation which acquired the property is a religious, charitable, or educational institution, the exemption of the property of which depends upon the express

provisions of statute, the exemption does not go to the extent of exonerating the property of the corporation from existing tax liens. In the case of state or a municipal corporation, the exemption of which is based upon the futility of collecting a tax from a body corporate which would levy another tax to pay it, land acquired by such a body corporate cannot be sold for nonpayment of taxes assessed prior to such acquisition.''

Also in 61 C. J. 418, sec. 450, it is stated:

''On the other hand, taxes levied on private property and not paid are not a charge on the property subsequent to its acquisition by the state or city, the public property exemption operating to exempt property acquired by the state from any further liability for taxes assessed prior to the acquisition, although there are decisions to the contrary.''

And in support of the text cites in footnotes 48 and 49 thereunder the cases of State v. Minidoka County, 50 Idaho, 419, 298 P. 366; State v. Locke, 29 N. M. 148, 219 P. 790, 30 A. L. R. 407; City of Wichita v. Anderson, 119 Kan. 241, 237 P. 1024; Gasaway v. City of Seattle, 52 Wash. 444, 100 P. 991, 21 L. R. A. (N. S.) 68.

In 2 A. L. R. 1535, the learned annotator in note annotation to the case of Triangle Land Co. v. City of Detroit, 204 Mich. 442, 170 N. W. 549, 2 A. L. R. 1526, discusses this question of tax sale of land acquired by a municipal corporation after levy and before sale, and cites as ''a well-considered case on this point'' Gachet v. New Orleans, 52 La. Ann. 813, 27 So. 348, and comments thereon as follows:

''In this case the city acquired property and took the same, subject to the state taxes for a designated year. These taxes had been assessed, but were not due and exigible at the time title was acquired by the city, nor did such taxes become delinquent until after this time. In holding that the subsequent sale of the property for these taxes, and the acquirement of the title by a third person, did not affect the title of the city, the court said: 'The moment public ownership of the lot attached, the moment it passed from the hands of * * * to the city, developing liability to taxation was arrested, and in point of fact and law the state taxes

for 1885 on the lot, under the assessment made in the name of the * * * vendor, never reached the point of maturity. * * * It follows that the tax collector was without authority to proceed as he did in the attempt to enforce payment of taxes claimed to be due the state for 1885, and that his action in the premises was void. * * * "The tax law of a state," says Desty, in his work on Taxation, vol. 1, p. 48, "applies to persons only, and not at all to political bodies like municipal corporations, which exercise in different degrees the sovereignty of the state." Hence it is that, when property upon which state taxes are assessed is acquired by a political subdivision of the state, * * * which property is acquired for purposes of public utility coming within the scope of the powers so delegated, and is immediately dedicated or applied to such purposes of public utility, the taxes so assessed in favor of the state upon the same cease to be exigible. It pertains to the public policy of the state not to exact taxation on property so held and used. Within the scope of the powers delegated to it the city stands for the state, and property acquired by the city in the due execution of its mandate from the state stands in consimili casu with property owned by the state itself, and taxes assessed in favor of the state upon such property must be held abated. * * *'

"This distinction is also clearly made in Foster v. Duluth (1913) 120 Minn. 484, 48 L. R. A. (N. S.) 707, 140 N. W. 129, in holding that property of the city could not be sold for taxes which were a lien upon the land at the time the city acquired it. The court said: 'After its purchase by the city in July, 1905, the property was devoted to public uses, and became public property. It was not thereafter subject to taxation. * * * It is technically inaccurate to say that it was exempt from taxation, for the term "exemption" rather presupposes a liability removed by some constitutional or statutory provision. The property is "exempt," not because of any such provision declaring it exempt, but because of its character as public property devoted to a public use. The property of the state and of its political subdivisions, arms, or

agencies, such as cities within its borders, when used exclusively for public purposes, is not subject to taxation, in the absence of constitutional or statutory provisions making public property subject to the tax laws of the state. This is the undisputed rule; but it is no better established than is the proposition that proceedings for the assessment of taxes against public property, or for their collection by judgment and sale, are absolutely void. * * * A reason for the rule is that a sale of the property to enforce collection of taxes assessed against it would destroy its character as public property, to the public injury.' "

To the same effect is State v. Snohomish County, 71 Wash. 320, 128 P. 667, and Smith v. Santa Monica, 162 Cal. 221, 121 P. 920, 921. In the last-named case the court said:

"The state does not tax the property of a municipality for state and county purposes, because this would be a taxation of its own property. For the same reason, when the property has come into the ownership of a municipal corporation, it will not attempt to enforce the tax by the sale of the property."

See, also, Laurel v. Weems, 100 Miss. 335, 56 So. 451, Ann. Cas. 1944A, 159; Independent School Dist. v. Hewitt, 105 Iowa, 663, 75 N. W. 497.

The doctrine of exemption from tax is thus in Foster v. Duluth, 120 Minn., 484, 140 N. W. 129, 131, 48 L. R. A. (N. S.) 707, further stated:

"We think * * * that it must be held that all proceedings taken after the property became public property were void, notwithstanding that the taxes for the current year may have been a lien on the property before its transfer. It by no means follows * * * that, because there was a valid lien, the proceedings to enforce that lien were valid. Nor is it important here what becomes of the lien. * * * All that is necessary to decide * * * is that all proceedings to assess the land for taxes, taken after it became public property, and all proceedings in attempting to enforce and collect the tax, were void."

Numerous other cases holding to like effect may be

found in 2 A. L. R. 1538. Also see State v. Locke, 29 N. M. 148, 219 P. 790, 30 A. L. R. 407, cited supra, wherein many cases are quoted and considered, and in which it is held that property acquired by the state or one of its municipal subdivisions, in its public capacity, is thereby absolved from further liability for taxes previously assessed against it, and that a subsequent sale thereof for such taxes is void. The learned annotator states in 30 A. L. R. 413, that:

"This annotation supplements an annotation upon this same subject in 2 A. L. R. 1535.

"As shown in the annottaion referred to, with the exception of the supreme court of Michigan, the cases are agreed that where property, subject to the lien of a tax, is acquired by the state or any of its agencies for a public purpose, it thereby becomes freed from such lien, and further steps to enforce it are without effect."

Our examination of the decisions of other sister states upon this question shows that, with the exception of some two or three states holding contra, the generally announced rule is one of exemption as above announced.

In view of the applicable rule based upon well established and generally recognized legal principles, announced in these cited cases, and the reasoning supporting it, we are of the opinion that the appellant's water plant was, upon its purchase and acquisition by the city, a public property, operated for its municipal use; and that it then became tax exempt, and the city was thereby relieved from liability for the payment of such prior lien tax, or in the instant case, from payment of the proportional part of the state and county tax lien on the plant for the year 1932 as might be found ratably due for the period thereof between August 20 and December 31, 1932, covered by appellant's ownership and possession thereof, no other portion of said 1932 tax lien being here involved or in controversy. It follows, therefore, that the learned chancellor erred in sustaining appellee's demurrer to plaintiff's petition, and its dismissal.

Judgment is reversed and case remanded to the lower court, with instructions to enter judgment in conformity with this opinion.