## Inter-County Rural Electric Co-Operative Corporation v. Reeves, Com'r of Revenue, et al.

March 26, 1943.

460

E. C. Newlin, H. W. Alexander, and J. Smith Barlow, Jr., for appellant.

Hubert Meredith, Attorney General, M. B. Holifield, Assistant Attorney General, for appellees.

John Francis Williamson, amicus curiae.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant, Inter-County Rural Electric Cooperative Corporation, is a non-profit corporation organized and operating under the provisions of KRS 279.010 to 279.990, inclusive. It has no capital stock and the rights and interests of each member of the corporation in respect to the property of the corporation and in respect to voting at membership meetings are equal. Any person may become a member upon payment of the membership fee, agreeing to purchase electric energy from the corporation, and agreeing to comply with the articles of incorporation, the by-laws, and the rules and regulations adopted by the board of directors; provided that no person may become a member except upon approval of the board of directors or a majority of the membership.

The corporation is the owner and operator of an electric distribution system including wires, poles, and other paraphernalia necessary and expedient to the distribution of electricity. The act provides that upon dissolution, the assets remaining after the payment of all liabilities and obligations shall be ratably distributed to the members of the corporation (KRS 279.180). It further provides (279.200) that a corporation organized under the act shall be exempt from taxation in the following language:

"Corporations formed under this chapter shall be exempt from all franchise taxes, profit taxes,

gross and net taxes, sales taxes, occupation taxes, privilege taxes, income taxes, taxes on electric current consumed and from all excise taxes whatsoever, any statute now existing or hereafter passed to the contrary notwithstanding. In lieu of all other state, county, city and district taxes, corporations formed under this chapter shall pay to the State Treasurer an annual tax of ten dollars.''

Conceiving the tax exemption provision to be in violation of the Constitution, the Commissioner of Revenue instructed appellant to file returns and schedules of its property and to pay taxes thereon in like manner and to the same extent required of other persons, firms, and corporations owning like property and rendering similar service, but who have not been organized under the Rural Electric Cooperative Corporation Act. Appellant then filed this action under section 639a—1 et seq. of the Civil Code of Practice petitioning the court for a declaration of its right to be, or not to be, exempt from taxation. The court was asked specifically to determine: (1) Whether appellant's property is "public property used for public purposes" within the purview of Section 170 of the Constitution of Kentucky; (2) Whether Section 27 of the Rural Electric Cooperative Act (the tax exemption provision) violates any of the provisions of the Constitution of Kentucky, in particular Sections 3, 59, 170, 171, 172, 174, 181, or 181a thereof; (3) Whether appellant's property, if subject to taxation at all, is subject to the ad valorem tax and to none other; (4) Whether appellant's property is subject to State ad valorem taxation only and exempt from local ad valorem taxation; and, (5) Whether appellant's property, if subject to taxation at all, "shall be considered as real property or as personal property.''

Section 170 of the Constitution provides:

"There shall be exempt from taxation public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding * * * two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely

to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto; household goods and other personal property of a person with a family, not exceeding two hundred and fifty dollars [$250.00] in value; crops grown in the year in which the assessment is made, and in the hands of the producer; and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location.''

Section 171, in so far as pertinent recites:

''The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.

''The General Assembly shall have power to divide property into classes and to determine what class or classes of property shall be subject to local taxation. Bonds of the state and of counties, municipalities, taxing and school districts shall not be subject to taxation.''

It is contended by appellant that the property appellee seeks to tax is ''public property used for public purposes'' and therefore exempt from state taxation. That if it be considered to be wrong in that contention, the Legislature, under section 171, supra, had the right to and it actually did, divide the property owned by the corporations organized under the act into a class apart from similar property owned by persons, firms, or corporations not organized under the act. That under that section, the Legislature had the right to, and it actually

did, exempt the property so classified from local taxation. Sections 171, 172, 174, and 202, of the Constitution provide for uniform taxes to be levied, assessed, and collected on all property. It is contended by appellees that these provisions as to uniformity would be violated by an attempt of the Legislature to classify property as to ownership and not as to kind. Appellant strikes at this argument with the assertion that the uniformity provisions require uniformity only within the class and not uniformity as between classes.

The Attorney General has conceded that the property owned by appellant is held and used for a public purpose, or at least, if it be determined to be public property, he concedes it follows as a necessary corollary that the property is being used for a public purpose; but he insists that the property has no aspect of public ownership and therefore, cannot be declared to be public property within the meaning of the Constitution.

The first observation to be made is that the devotion of its functions to public purposes does not clothe property with public ownership. It is obvious that a private person, firm, or corporation engaged in the distribution of electricity is engaged in an enterprise which serves a purpose no less public than a municipality or other governmental agency engaged in like enterprise. But such function does not wrest the ownership of the property from those who acquired it previous to the service to which it became devoted, and the service to which it is put does not of itself command exemption from taxation under section 170 of the Constitution, because the purpose of the service is not the only public attribute the property must have attained to be the subject of the exemption claimed. It must in addition be owned by the public. As said in City of Harlan v. Blair, 251 Ky. 51, 64 S. W. (2d) 434, 436,

> "The property of the state and of its political subdivisions, * * * such as cities within its borders, when used exclusively for public purposes, is not subject to taxation."

Therefore, to answer the first question specifically presented, we must inquire into the meaning of the word public as used in respect to ownership of property.

In the construction of constitutions and statutes simple words must be given their ordinary meaning and

cannot be given a strained interpretation for the purpose of effecting a result not contemplated by the members of the assembly which framed the provisions under consideration (KRS 446.080; Louisville Trust Co. v. Commissioners of Sinking Fund of Louisville, 260 Ky. 219, 84 S. W. (2d) 30).

Webster's New International Dictionary defines the word public to be ''The term used in designating the legal character of various acts, rights, occupations, etc., that affect or belong to the collective body of a state or community.'' It necessarily follows that to be exempt under section 170 of the Constitution, the property must be owned by the collective body of a state or community. We look to the same authority to learn the meaning of the word collective. Collective is defined to be ''Characteristic of the experience in common or the united action of the members of an aggregation or group, whether animal or human, as distinct from that of individuals; marked by simultaneity, or uniformity, or similarity, as of response to stimulus, among all the members of an aggregation.'' Then, to be exempt under section 170, the property must be owned by all the members of the state or community, because the state or community is the aggregation to which the word public refers. The question then resolves itself into whether the property in question is owned by all the citizens of the state, or by all the citizens of a community. The Act recites that the property in question shall be acquired by the corporation; that the corporation shall be composed of members obligated to purchase the electric energy it distributes; before one may become a member he must apply to the corporation or its directors and the application must be approved by it or them; upon dissolution, the assets of the corporation shall be ratably distributed to the members. These provisions preclude the construction that the property is owned by the public.

The provisions of the Act restricting the membership of the corporation to the rural residents of the state does not clothe the property with public ownership. It is still owned by the members of the corporation and unless it be demonstrated that all rural residents of the state are, ipso facto members of the corporation, this argument cannot prevail.

It will be noted that the portion of section 171 of the Constitution which we have quoted authorizes the

Legislature to divide property into classes and to determine what class of property may be subject to local taxation. In the recent case of Martin v. High Splint Coal Company, 268 Ky. 11, 103 S. W. (2d) 711, 714, the court said:

> "Taxation of all property being the rule and exemptions the exception, exemptions will never be presumed or implied in reference to property which would be subject to taxation without some express grant of immunity."

That thought leads us to the inevitable conclusion that a strict intrepretation must be given to the phrase "class of property" in determination of the right of the Legislature to grant immunity. The word class means "group of persons, things, qualities, or activities, having common characteristics or attributes." Webster's New International Dictionary. Property, in its distinguishing sense, is defined by the same authority to be "Possessions, irrespective of their ownership." Thus, it will be seen that while there may be classes of individuals, or of qualities, or of activities, by the use of the word property, section 171 confines the class, which may be separated from the whole, to be that of possessions irrespective of their ownership. The uniformity provisions of the Constitution contained in sections 171, 172, 174, and 202 were adopted for the well known purpose of preventing the Legislature from exempting certain individuals or groups, or classes of individuals from taxation and requiring all persons to bear their portion of taxation without discrimination. To read into section 171 the authority for the Legislature to exempt property by reason of its ownership would defeat the very purpose of the uniformity provisions referred to above. In the adoption of section 171 neither the authors of that provision nor the people as a whole can be charged with ignorance of the fact that classes may be composed of individuals, qualities, activities, or things. Assuming, as we must, that they were possessed of such knowledge, they provided that the class which the Legislature was privileged to exempt from taxation was a class composed solely of things, or in other words, a class of possessions irrespective of their ownership. The exemption clause of the Act attempts to exempt the property by reason of its ownership and not by reason of any qualities inherent in the property itself. Such classifi-

cation is not permissible under section 171 of the Constitution.

In answering the third question for determination it will be remembered that the Act provides that the corporation shall not be permitted to make a profit and, of course, as long as it complies with that provision of the Act, the value of its franchise cannot exceed a reasonable value to be placed upon its property used and usable. Therefore, as long as it abides by the mandate in respect to profits, it will not have any added franchise value subject to taxation. Nevertheless, for the purpose of ascertaining whether the corporation is conducting its affairs upon a non-profit basis, the Department of Revenue has the right to require it to file schedules and reports showing the corporation has no extraordinary franchise value.

As to whether the poles, wires, and other paraphernalia which the Commonwealth seeks to tax and which are situate on right of ways obtained by the corporation from the various owners of the land upon which they are placed, are to be considered real or personal property, depends upon the nature of the right granted to the corporation by the owners of the land over which the right is granted. In this distinction, right of ways are of two classes, the first is an easement appurtenant to the land, the second is sometimes termed an easement in gross but is more properly called a right of way in gross. An easement, of course, is a right, distinguished from ownership, to use in some manner the land of another for a specified purpose. Callan v. Walters, Tex. Civ. App., 190 S. W. 829. The distinction between an easement appurtenant to the land and a right of way in gross is that in the former there is, and in the latter there is not, a dominant tenement. Wagner v. Hanna, 38 Cal. 111, 99 Am. Dec. 354. In the first, it is the land constituting the dominant estate which possessed the easement and not the owner of the land. Ross v. Thompson, 78 Ind. 90. In the second, the right is personal to the grantee because it is not appurtenant to other premises, i. e., a dominant estate. If the grant is appurtenant to the land, the premises to which it is appended should be referred to in the instrument granting the right, in which case the right to the easement invariably passes, unless specifically withheld, by transfer of title to the dominant estate. It therefore becomes necessary to examine the

form of conveyance by which the corporation has acquired its right of ways. The blank form is in the following language:

"Location No.

"Right of Way Easement

"Know All Men by These Presents, that the undersigned        and his wife, for a good and valuable consideration, the receipt whereof is hereby acknowledged, does hereby grant unto Inter-County Rural Electric Cooperative Corporation, a corporation whose post office address is Danville, in Boyle County, Kentucky, and its successors and assigns, forever, the right to enter upon the lands of the undersigned, situated in the county of        State of Kentucky.

"Located on the        road, about        miles from the town of        ; Bounded on the North by the lands of        ; Bounded on the East by the lands of        ; Bounded on the South by the lands of        ; Bounded on the West by the lands of        ; and containing        acres more or less; being the same real estate conveyed to        by deed from        dated        , and now of record in the office of the Clerk of the        County Court in Deed Book,        , page        ; and to place, construct, operate, repair, maintain, relocate, and replace thereon an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

"In granting this easement it is understood that at pole locations; only a single pole and appurtenances will be used and that the location of the poles will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction.

"The undersigned covenants that he is the owner of the above described lands and that the said lands are free and clear of encumbrances and liens of whatsoever character except those held by the following persons:

"All damages to the property of the undersigned caused by said corporation in the exercise of the rights and privileges herein granted or arising from the use of said Corporation of the property of the undersigned hereinabove described shall be borne by said Corporation except that said Corporation will not be libeled for any damage for cutting or trimming trees in the manner and to the extent hereinabove specified."

"In Testimony Whereof, the parties hereunto set their hands this        day of        , 19      .

_____

_____,"

It will be seen that the right granted by this instrument is personal to the corporation and does not subsist as an appurtenance to any interest in land owned by the corporation, and no dominant estate is referred to in the writing. While the right granted is assignable by the terms of the contract, such right will not pass as an appurtenance to any estate owned by the corporation. That being true, the use conveyed by the writing is less than a freehold and properly must be designated a chattel real, the fixtures to which are personal property as distinguished from real estate.

Our consideration of the issues involved in this case has been confined to those discussed in the briefs. No question has been raised concerning the corporation's liability for taxes other than the fair valuation of its property and the value added thereto, if any, by reason of the exercise of the franchise granted by the Act. The chancellor adjudged the act to be unconstitutional "in so far as it undertakes to substitute an annual tax of ten dollars for any and all ad valorem property and franchise taxes" to which part of his judgment solely the appeal is directed. No cross appeal has been perfected as to that part of the judgment holding the exemption to be constitutional in its application to "profit taxes, gross and net taxes, sales taxes, occupation taxes, privilege taxes, income taxes, taxes on electric current consumed, and all excise taxes." The judgment of the chancellor on the issues presented by the appeal is in conformity with the views herein expressed.

Wherefore, the judgment is affirmed.

Whole court sitting except Judge Cammack.