## PHELPS et al. v. FITCH.

Court of Appeals of Kentucky.
Feb. 27, 1953.

Ben Mann, Paintsville, for appellants.
J. K. Wells, Paintsville, for appellee.

CULLEN, Commissioner.

This appeal involves the question of whether the appellee Troy Fitch is entitled to use a passway across the lands of the appellants John R. Phelps and Ethel Phelps, for the purpose of transporting coal from a mine. The judgment of the lower court dismissed the petition of the Phelpses, in which they had sought either compensation for the use of the passway, or an injunction against its use.

Prior to 1905, James C. Preston had owned a tract of land adjoining a county road, in Johnson County. In a division of this tract after his death, one of his heirs, a predecessor in title of the Phelpses, received a parcel along the road, which we will hereinafter call the servient estate. Another heir, Vina Short, received a parcel which was separated from the road by the servient estate. In the partition deeds, a "nine foot roadway leading out to the county road" was reserved in favor of Vina Short's parcel, which we will call the dominant estate.

In 1907, Vina Short conveyed the mineral rights under her land to John C. C. Mayo, and by various conveyances these rights came into the ownership of the Pittsburg Consolidation Coal Company. The title to the surface passed to one Warnie Short. In the meantime, the Phelpses became the owners of the servient estate.

In 1950, the appellee Troy Fitch acquired a license from the coal company to remove the coal from under the dominant estate. He also acquired a 20-year lease of the surface of the dominant estate, from Warnie Short, which lease purported to give Fitch the right to use the passway across the Phelps' land. Fitch then commenced to transport coal, by trucks, across the passway, precipitating this lawsuit.

There was evidence that the owner of the servient estate had built fences along the sides of the passway, around 1929, enclosing a width of more than nine feet, and that the surface of the roadway itself was a little wider than nine feet. There also was evidence that the passway had been used, as defined by the fences, continuously since 1929, for various purposes including the occasional hauling of coal. However, it appears that there had been no attempt to remove the coal on a commercial basis until Fitch began to do so in 1950.

The Phelpses admit that Warnie Short has the right to use the passway, and apparently they concede that he could have used the passway for the purpose of hauling coal, if he had owned the coal as well as the surface. They do not admit that the coal company could have used the passway, and they contend that neither Warnie Short nor the coal company could convey to Fitch the naked right to use the passway, independent of some legal title by Fitch in the dominant estate itself. They claim that Fitch's license from the coal company gives him no title to the minerals, and his lease of the surface from Warnie Short gives him no title to the surface.

As we view the case, the determining question should be whether the use of the

passway by Fitch unduly increases the burden authorized to be placed upon the servient estate by the terms of the easement grant. If a holder of legal title to all of the dominant estate could have used the passway for the purpose of removing coal, as the Phelpses seem to concede, we can see no reason why it should make any difference to the owner of the servient estate whether the person actually removing the coal has any title or not.

This is not a case where an owner of a dominant estate has attempted to transform an easement appurtenant into an easement in gross. The only use which Fitch is attempting to make of the easement is a use directly appurtenant to the dominant estate. The case of Kentucky Pipe Line Co. v. Hatfield, 223 Ky. 315, 3 S.W.2d 654, relied upon by the Phelpses, is not in point, because in that case the owner of the dominant estate, with an easement for a pipe line to convey oil and gas from that estate, sought to convey to a third person the right to build a pipe line across the servient estate for the purpose of conveying oil and gas from other tracts of land.

We are cited to no authority for the proposition that the use of an easement, for lawful purposes in connection with the dominant estate, may be made only by a person holding a legal title to the dominant estate. On the contrary, we find it to be generally recognized that a lessee of a dominant estate is entitled to the use of easements legally appurtenant to the demised premises and reasonably necessary to their enjoyment. 32 Am.Jur., Landlord and Tenant, § 169, p. 164; 51 C.J.S., Landlord and Tenant, § 293, p. 946; 28 C.J.S., Easements, § 90, p. 769.

The general rule, as stated in 28 C.J.S., Easements, § 90, p. 769, is:

"Where a way is appurtenant to an estate, it may be used by those who own or lawfully occupy any part thereof, and by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not. * * *"

We think it is immaterial whether Fitch's interest in the dominant estate is a fee simple title, a leasehold interest or a mere license, so long as his use of the easement is appurtenant to the use of the dominant estate and is a character of use permitted by the easement.

There is some contention by the Phelpses that the coal trucks are using more than nine feet in width of the passway. However, we think the chancellor was justified in concluding from the evidence that any such use was only casual, and not unreasonable. If the Phelpses can establish an abuse of the easement in the future, they will have a remedy by way of damages.

The judgment is affirmed.