RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0937-MR

MYRON THORNBERRY AND
PEGGY THORNBERRY                                                      APPELLANTS

APPEAL FROM PENDLETON CIRCUIT COURT
v.            HONORABLE JAY B. DELANEY, JUDGE
ACTION NO. 20-CI-00111

ASA WOLFE AND
NATALIE WOLFE                                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; GOODWINE AND TAYLOR, JUDGES.

GOODWINE, JUDGE: Myron and Peggy Thornberry appeal a June 30, 2022,

order of the Pendleton Circuit Court interpreting and enforcing a mediated

settlement agreement they entered with appellees Asa and Natalie Wolfe regarding

an easement bordering their respective properties. They argue that the circuit court

improperly construed the mediated agreement as providing for an appurtenant easement rather than an easement in gross and incorrectly determined that the easement in question could be used by any individuals lawfully going to and from the Wolfes' premises rather than only by Asa and Natalie. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2020, the Wolfes and Thornberrys filed suit against each other in Pendleton Circuit Court to establish their respective rights to use a gravel road that begins at Knoxville Road and largely adheres to the boundary between their adjoining properties in Pendleton County. The Thornberrys claimed exclusive ownership of the road, asserting it was within the metes and bounds of their deed, whereas the Wolfes claimed a prescriptive easement over the gravel road, asserting they and their grantors had openly, continuously, and adversely used it for several decades as the primary means of accessing their tract. On March 1, 2021, immediately after mediating their dispute, the parties then entered a settlement agreement that provided in relevant part:

> 1. Surveyors Simpson and Hickle shall agree upon a valid description to encompass the gravel road which is the subject of this lawsuit. This survey as agreed shall include the common property line of the parties in the disputed area.

> 2. Plaintiffs [the Wolfes] shall Quitclaim the disputed portion of / deed overlap gravel road as described above

-2-

to the Defendants [the Thornberrys] who in turn shall grant a permanent easement to run with the land to said gravel road to the Plaintiffs per the description agreed by the surveyors. The purpose of the easement shall be for ingress and egress to Plaintiffs' property.

The circuit court incorporated the parties' agreement into an April 14, 2021, order. The following month, pursuant to the order, surveyors Simpson and Hickle agreed upon a description encompassing the gravel road, and the Wolfes tendered quitclaim and easement deeds to the Thornberrys, incorporating the surveyors' description. However, the Thornberrys did not execute the tendered deeds and instead erected a fence over part of the gravel road – conduct that prompted a contempt motion from the Wolfes and resulted in a July 19, 2021, court order directing the Thornberrys to remove the offending portions of their fence. Eventually, the Thornberrys removed their fence. They did not, however, execute the deeds. As for why the Thornberrys persisted in refusing to do so, they offered their explanation – for the first time – on March 14, 2022, in response to yet another contempt motion from the Wolfes. In the relevant part of their filing to that effect, the Thornberrys argued:

Defendants assert that the proposed Easement does not reflect the terms of the parties' Mediated Agreement.

The terms of the proposed Easement state that it extends to anyone who needs to access the gravel roadway, including "**guests, invitees, contractors, agents and all others using with the permission of the Grantors or the Grantees** . . ." This could include the entire general

-3-

public.  Nowhere in the Mediated Agreement are these terms stated.  The Petitioners have conveniently expanded the terms of the Mediated Agreement.

Lastly, the easement states that it will run with the land. That provision was not agreed on by Defendants.  It was written in after the fact and was not initialed by Defendants.  Therefore, it should be excluded.

The circuit court conducted an evidentiary hearing regarding the Wolfes' latest contempt motion and the Thornberrys' response.  After considering the language of the parties' mediated settlement, the proffered deeds, and testimony from Asa Wolfe and Peggy Thornberry, the circuit court entered a dispositive order rejecting the Thornberrys' interpretation and directing the Thornberrys to execute the deeds.  This appeal followed.  Additional facts will be discussed as necessary in our analysis.

## STANDARD OF REVIEW

A settlement, such as the parties' mediated agreement incorporated into the circuit court's April 14, 2021, order, "is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002).  "The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000).  We review issues of contract construction *de novo*. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003).  We review

-4-

the circuit court's factual findings under the "clearly erroneous" standard. Kentucky Rule of Civil Procedure (CR) 52.01; *Largent v. Largent*, 643 S.W.2d 261, 263 (Ky. 1982).

## ANALYSIS

The Thornberrys argue that the circuit court erred by interpreting the mediated settlement agreement contrary to their previous position and consequently directing them to execute the tendered deeds. As indicated at the onset, this appeal focuses on the easement's type and scope contemplated in the parties' mediated agreement.

Regarding the type, the Thornberrys' central assumption underlying their position is that the easement expressly contemplated in the mediated agreement was gross rather than appurtenant. Easements can be gross or appurtenant, the distinction being that "in the first there is not, and in the second there is, a dominant tenement to which it is attached." *Meade v. Ginn*, 159 S.W.3d 314, 320 (Ky. 2004) (quoting 25 Am. Jur.2d *Easements and Licenses in Real Property* § 11 (1996)). "[A]n easement in gross is a mere personal interest in or right to use the land of another. It is attached to and vested in the person to whom it is granted." *Id.* On the other hand, an appurtenant easement is owned by the dominant tenement, not the owner of the tenement. *See Inter-County Rural Elec. Co-op. Corp. v. Reeves*, 294 Ky. 458, 171 S.W.2d 978, 983 (1943). Furthermore,

an easement appurtenant inheres in the land. It cannot be "terminated by an act of the parties (for example, abandonment, merger, or conveyance) or by operation of law, as in the case of forfeiture or otherwise." *Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991).

With that said, creating a private passway is never presumed to be personal or gross when it can be construed to be appurtenant to some other estate because the law favors such construction as will create a covenant running with the land. *See Riddle v. Jones*, 191 Ky. 763, 231 S.W. 503, 505 (1921); *Martin v. Music*, 254 S.W.2d 701, 703 (Ky. 1953). Furthermore, "[a] declaration in the conveying instrument that restrictive covenants are to *run with the land* is a significant factor in determining that the grantor intended the restriction to benefit the land and not just his personal interests." *KL & JL Investments, Inc. v. Lynch*, 472 S.W.3d 540, 546 (Ky. App. 2015) (emphasis added) (internal quotation marks and citations omitted).

Here, the parties' mediated settlement agreement provided that the Thornberrys would grant the Wolfes a "permanent easement" that would "run with the land" and serve the purpose of "ingress and egress to [the Wolfes'] property." The language contained in the mediated agreement is unambiguous and, fairly interpreted consistently with the above principles, contemplated an appurtenant

easement – with the Thornberrys' property as the servient estate and the Wolfes' property as the dominant estate.

The Thornberrys also claim that the "run with the land" language should not be part of the mediated agreement. To that end, they assert that it was not part of the agreement when they signed it; and that their attorney wrote it in afterward without their consent before tendering it to the Wolfes for their signatures and permitting the circuit court to incorporate it into its order.

The Thornberrys' argument in this vein, as they described it below, could objectively be taken two ways: (1) as an attempt to vary the language of the mediated agreement through parol evidence of their intent; or (2) as an assertion that the mediated agreement is void due to their own attorney's mistake. If their argument is the former, absent ambiguity in the contract – and here there is none – the parties' intentions must be discerned from the four corners of the instrument without resorting to parol evidence. *See Cantrell*, 94 S.W.3d at 385. If their argument is the latter, a judgment is presumed valid and cannot be collaterally attacked unless it appears that it is void from the face of the record. *See Spicer v. Spicer*, 314 Ky. 560, 236 S.W.2d 474, 476 (1951). However, a unilateral mistake would, at most, render a judgment *voidable*. Indeed, even an unauthorized settlement may be ratified by the client's silence because "[i]t is the client's duty, having knowledge of the settlement, to express his disapproval within a reasonable

time." *Combs' Adm'r v. Virginia Iron, Coal & Coke Co.*, 236 Ky. 524, 33 S.W.2d 649, 651 (1930). As the circuit court noted below, the Thornberrys did not express disapproval of this aspect of the mediated agreement until almost a year after it was entered on the record. They have *never* invoked CR 60.02 or taken any action to alter, amend, or vacate the April 14, 2021, order that incorporated their agreement as written. As such, the April 14, 2021, order – and the parties' agreement incorporated into that order – remain presumptively valid.

The Thornberrys also claim that if the mediated agreement provided for an appurtenant easement, it is "unconscionable." However, the circuit court did not address this claim in its dispositive order; in violation of our civil rules, the Thornberrys do not indicate when or how they preserved this claim below; and from all appearances of the record, the only time the Thornberrys have ever raised the doctrine of unconscionability is in this appeal. As such, we lack the authority to address this point. *See Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

Having resolved the type of easement contemplated in the parties' mediated agreement, we now proceed to the Thornberrys' remaining argument regarding its scope. The circuit court held that "anyone legally coming to the [Wolfes'] property can use the easement for ingress and egress with the same limitations as the [Wolfes]," and that the language of the tendered easement deed –

which permitted those other persons to utilize the easement – therefore "does not expand the use of the easement beyond that of the mediated agreement." The Thornberrys assert the circuit court erred in this regard, arguing that even if the easement contemplated in the mediated agreement is appurtenant, *only* Asa and Natalie are permitted to use it because they are the only individuals holding title to the dominant estate and because no other individuals were specified in in the mediated agreement.

We disagree. Addressing roughly the same argument posited by the Thornberrys, our former High Court explained:

> We are cited to no authority for the proposition that the use of an easement, for lawful purposes in connection with the dominant estate, may be made only by a person holding a legal title to the dominant estate. On the contrary, we find it to be generally recognized that a lessee of a dominant estate is entitled to the use of easements legally appurtenant to the demised premises and reasonably necessary to their enjoyment. 32 Am.Jur., Landlord and Tenant, § 169, p. 164; 51 C.J.S., Landlord and Tenant, § 293, p. 946; 28 C.J.S., Easements, § 90, p. 769.
>
> The general rule, as stated in 28 C.J.S., Easements, § 90, p. 769, is:
>
>> 'Where a way is appurtenant to an estate, it may be used by those who own or lawfully occupy any part thereof, *and by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not*[.']

> We think it is immaterial whether Fitch's interest in the dominant estate is a fee simple title, a leasehold interest or a mere license, so long as his use of the easement is appurtenant to the use of the dominant estate and is a character of use permitted by the easement.

*Phelps v. Fitch*, 255 S.W.2d 660, 662 (Ky. 1953) (emphasis added).

In short, the circuit court's interpretation of the scope of the easement contemplated in the parties' mediated agreement was not erroneous but rather consistent with our jurisprudence.

## CONCLUSION

The circuit court committed no error below. We therefore affirm.

ALL CONCUR.


BRIEF FOR APPELLANTS:

John Fortner
Covington, Kentucky

BRIEF FOR APPELLEES:

James W. Morgan, Jr.
Covington, Kentucky