CASE 65—PETITION EQUITY—OCTOBER 1]

# Hobson v. Cartwright.

### APPEAL FROM WARREN CIRCUIT COURT.

1. EASEMENT—RESTRICTION IN DEED AS TO ERECTION BY GRANTOR OF
BUILDING ON ADJOINING LOT.— It should never be assumed, in
absence of plain and unambiguous words to such effect, that parties con-
tract in relation to sale or exchange of real property with sole regard
to its present condition, and without at all contemplating or providing
for future changes and improvement that may take place in or around
it.

A deed to a city lot stipulated that the grantors were not to erect,
back of their existing counting-room, any building more than one-
story high on an adjoining lot, reserved from sale to the grantee; the
object of that agreement, as recited in the deed, being that the grantee
was not to be incommoded in regard to light in the back part of his
premises by any " high buildings " on the grantor's premises back of
their counting-room.   In this action by the grantee to enjoin one who
has purchased the adjoining lot from the grantors from increasing the
height of the counting-room to the extent of ten feet:   Held—That
even if the restriction in the deed can be regarded as applying to the
existing counting-room, a one-story structure, it was not intended to
forever confine that structure to the precise height it then was, but
merely to prevent the raising of it to the height of a two-story building.
2. SAME.—The easement created by the stipulation in the deed was annexed
to the lot conveyed to the grantee, and followed it into the hands of the
plaintiff, a remote vendee.

R. RODES, FOR APPELLANT.

Hobson v. Cartwright.

The only question in this case is, has Hobson been, or is he now, *incommoded* in light or air ? If he is so *incommoded*, both the letter and spirit of the covenants in the deeds of Graham & Co. are violated. Not only do these deeds and these covenants forbid anything to be done to Hobson's detriment, but time and prescription have worked out the problem definitely and settled this controversy. They have defined the meaning of the word "incommoded" as well as the height of this one-story. (High on Injunctions, sec. 547; Washburn on Easements and Servitudes, p. 654; side page, 495; 2 Washburn on Real Property, pp. 317, 322, 323-4-5.)

W. E. SETTLE on same side cites the following additional authorities: 3 Am. Rep., 398; 10 Am. Rep., 545-6; 24 Am. Dec., 222; 3 Pomeroy's Eq., secs. 1337, 1340, 1342, 1359; 80 Ky., 391.

JOHN M. GALLOWAY for appellee.

The intent of the law is to favor progress, and to restrict the right of the grantee in a case like this no more than is necessary to give substantial effect to the easement fairly and liberally construed.

The parties to the deeds in this case used the term "one-story" in view of the needs and demands of various times and purposes for which said property might be used, intending thereby to prevent any "high building" being erected there, and not to prevent any slight change such as has been made in the wall. (Devlin on Deeds, sec. 840; 20 Pick., 291; Ray v. Sweeney, 14 Bush, 1; Morrison v. Marquart, 24 Iowa, 35; Mullen v. Stricker, 19 Ohio St., 142; Haverstick v. Sipe, 33 Pa., St., 368.)

JUDGE LEWIS delivered the opinion of the court.

In May, 1842, Graham, Howarth & Graham, conveyed to Isaac Newton a parcel of land fronting 12 feet on Main street and extending back 210 feet to an alley, in the then town of Bowling Green. In the deed was a reservation, or condition, that Newton nor his heirs or assigns was ever to erect any building on the lot between 40 and 90 feet from the front line thereof, such intermediate space to remain open to light and air for any building the grantors then had or might erect upon the residue of lots 62 and 58, not then sold to him. It was further stipulated that the grantors were not to erect any building more than one story high on the part of said two lots

reserved from sale to him back of their then existing counting-room; the object of that agreement, as recited in the deed, being that said Newton was not to be incommoded in regard to light in the back part of his premises by any high building on their premises, back of their counting-room.

In October, 1842, the same grantors conveyed to Atchison a parcel of land fronting 20 feet on the same street, extending back 210 feet and adjacent to Newton's lot, being the same upon which said counting-room was situated. In that deed it was recited that the grantors transferred to the grantee all right and privilege of light and air reserved by them in the deed to Newton. And it was also stipulated that said Atchison, his heirs and assigns, were to be bound by the covenant contained in that deed, which, and the object thereof, were specially set forth, and that neither he or they should ever erect any building more than one story high on the lot back of said counting-room.

It appears from the evidence that on the Newton lot is a two-story house extending back 40 feet, now owned and used by appellant as a business house. On the Atchison lot is a two-story building extending back 60 feet to a one-story one extending 40 feet further, the whole structure, 100 feet deep, being owned and used by appellees as a store or merchant's house.

This action was brought in 1889 by appellant claiming as remote vendee under Newton to enjoin appellees increasing the height of the one-story structure, which, it was alleged, he was about doing, and that the evidence shows he has done to the extent of about two feet by building up the wall, it being a brick house.

There can be no serious dispute of the easement claimed being annexed to the lot conveyed by Graham, etc., to Newton, and consequently following it into the hands of appellant. For it was not only in express terms thereby granted, but in the subsequent deed to Atchison specially reserved, in place or consideration of which the Newton lot was charged with a reciprocal easement, ever since enjoyed.

The only question, then, is to what extent, according to a fair construction of the two Graham deeds, which do not essentially differ on that subject, such easement was intended to be granted and enjoyed by Newton and those claiming under him. And in determining that question regard must be had to the rights of the owner of the servient estate as well as of the owner of the dominant estate. For both deeds plainly show it was not intended to wholly deprive Atchison and those claiming under him of the use and enjoyment of the lot conveyed. While the actual existence of the one-story building on his lot, extending as it did then and does now 60 feet beyond the Newton building, necessarily restricted Newton and those claiming under him to a partial and imperfect use of light and air coming from that direction, his main reliance therefor being the open space in rear of his own building.

But it is somewhat questionable whether it was intended there should be any restriction at all as to the height of the present one-story building. For Atchison was inhibited, in the language of the deeds, from "*erecting any building more than one story high on the part of said lot back of the counting-house*," which restriction does not seem to be properly applicable to the one-story

building in question, that some of the witnesses testify was, at date of the deeds, already erected and being used in connection with the two-story building in front as one business house. We will, however, consider and determine the case as if the restriction did apply to the structure which appellee has added to.

We think it evident the parties had in view, and that the purpose of the restriction was, to prevent the erection of any two-story building back of the counting-room; or, it may be, to prevent the raising of the existing one-story structure to the height of a two-story building; and that it was not intended to unalterably and forever confine the latter to the precise height it then was. For the object of granting the easement, as recited in both deeds, was that "Newton should not be incommoded in regard to light and air in the back part of his premises by any *high* building," by which was clearly meant a two-story building. Moreover, it will be observed that, while the space in rear of Newton's storehouse, upon which he was prohibited erecting any building, was particularly measured and described by feet, as was done in respect to the lots conveyed, the height of such building as might be erected back of the counting-room was simply limited to one story, which is the distance from one floor of a house to another, that may be increased or decreased at will without at all destroying identity of the building.

It seems to us, therefore, if the parties had intended to prescribe a definite and fixed height above which the one-story building was never to be increased, if any restriction at all is applicable to it, it would have been so plainly stated in the deeds. And as it was not done, we do not see how appellant can complain until appellee has

added, or is about to add, another story to the present one-story structure; or, at least, until he has made, or is about to make, the present story so unusually and unreasonably high as to destroy all benefit of the easement, or impair it to an extent not contemplated by the parties.

The purpose of appellees in increasing height of the one-story building to the extent of two feet, as alleged and shown, was to have the ceiling thereof even with that of the front building, thereby making a storeroom of the depth of 100 feet, having a ceiling of uniform height from front to rear.

If they had a right to increase the height of the one story at all, it certainly has not been exercised unreasonably, nor, so far as the record shows, for an improper purpose. On the contrary, the improvement was necessary for successful operation of their business as merchants. And giving the deeds a just and fair interpretation, we do not think appellant has been unreasonably or illegally incommoded; certainly he has not been incommoded by erection of " any high building " in meaning of the deeds.

The only possible ground upon which he can found a cause of action is that the actual height of the one-story structure, at date of the deeds, was intended by the parties to remain fixed and unchanged, whatever might be the future increase of population and business of Bowling Green, and consequent necessity for changing and improving appellee's storehouse to correspond with changes and improved methods of doing business. There is nothing in the language or context of the two deeds requiring such interpretation; and for the same reason that has induced this, and courts generally of this coun-

try to reject the English rule as to prescriptive right to light and air, it should not be given. That reason is that, as stated in Washburne on Easements, 498, "such construction is not suited to the condition of a country growing and changing so rapidly in all its relations of property as well as its value and modes of enjoyment."

It, therefore, should never be assumed, in absence of plain and unambiguous words to such effect, that parties contract in relation to sale or exchange of real property with sole regard to its present condition and without at all contemplating or providing for future changes and improvement that may take place in or around it.

In our opinion it was not error to dismiss the action. Judgment affirmed.