## Stone v. Burkhead.

(Decided October 2, 1914.)

## Appeal from Hardin Circuit Court.

1. Easements—Obstruction of Passway.—The rule is general that where one conveys a part of his estate he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part.

2. Nuisance—Action to Enjoin Shoeing of Horses in Front of Store —Evidence.—In an action to enjoin the shoeing of horses in front of a store on the ground that it was a nuisance to the owner and his customers, evidence examined and held sufficient to support the judgment enjoining the nuisance.

G. W. STONE, H. L. JAMES and GEORGE HOLBERT for appellant.

L. A. FAUREST for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing on the original appeal and affirming on cross appeal.

In 1866 John W. Walker bought a certain lot in the village of Hardin Springs, Kentucky, and erected thereon a sawmill and other improvements, and two years later he bought an adjoining lot upon which he erected a dwelling house, and a store house, which was on the dwelling house lot, but right up to the line of the mill lot.

He continued to occupy these two tracts of land, and to use them in connection with each other, operating his mills and machinery on one lot and living upon and running his store on the other lot, but all used and operated by him as one place.

He erected on the mill lot a saw mill, a flouring mill and a corn mill, and perhaps some other improvements. In the store house on the residence lot he ran a general store, and in addition kept the post office for the village.

The southeast corner of the residence lot where it adjoins the mill yard lot is near a public road, and, after Walker had established these various industries on the mill yard lot and opened his general store on the residence lot adjoining, he caused to be opened up on the mill yard lot along the line of the residence lot a passway which was used by the public going to and from the store;

and the mill yard, and the business which he was there conducting, and which passway ran along immediately in front of the storehouse.

Walker and the general public continued to use, without interruption or question, this passway until 1894, when Walker died.

After the death of Walker his children continued the ownership of the two pieces of property for several years, and the use of the passway by them and the public continued as before.

Finally about 1903 appellant, Stone, who had married one of Walker's daughters, became the owner of the residence tract, and one Paul became the owner of the mill tract, and they each continued to own the same and the passway remained as before and was used by them and the public without interruption or question until March, 1913, when Paul sold and conveyed to the appellee, Burkhead, a small tract on the southeast corner of the mill yard lot including part of the passway. Shortly thereafter Burkhead built a blacksmith shop on this lot near the store house of appellant, and obstructed the passway by stretching and maintaing a wire across it so that vehicles could not drive up to the store of appellant.

Appellant brought this action seeking to enjoin the obstruction of the passway, and to enjoin appellee from shoeing horses and mules near appellant's store house and outside of his shop building, immediately and in front of and in close proximity to appellant's store and post office, upon the idea that it is a private nuisance.

The lower court in its judgment enjoined the appellee from shoeing horses and mules in a certain part of the lot near appellant's store, but refused to enjoin him from obstructing the passway, and quieted appellee's title to the lot, including the passway. From so much of this judgment as declined to enjoin appellee from obstructing the passway appellant appeals, and the appellee prosecutes a cross appeal from so much of the judgment as enjoined him from using the small area near the store for shoeing horses.

It is clear from the record that at the time appellant became the owner of the residence lot the passway was being used in connection with that lot and had been so used since about 1868; the physical facts and conformation of the ground showed that it would be impracticable to get to appellant's store with wagons or vehicles in

any other way than by this passway, and it is the contention of appellant that under these conditions there was an implied grant of the right to the use of the passway on the mill lot in his deed to the residence lot, inasmuch as it was perfectly apparent that the enjoyment of the use of the residence lot for the purposes for which it had been used for many years could not be had without the use of the passway.

Upon the severance of the title to the two lots, which had been held by Walker and his devisees from 1868 to about 1900, each of the owners of the separate lots accepted the conveyance with an implied right to the use by either of this passway.

The doctrine has been long recognized and applied, and is thus stated by Jones on Easements:

"The rule is general that, where one conveys a part of his estate, he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part."

This same doctrine has been recognized and applied by the courts of this State in many cases.

In the case of Irvine v. McCreary, 108 Ky., 495, this court approved the following quotation from Washburn on Easements:

"It may be considered as settled in the United States that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents or property which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general ownership."

The same doctrine has been upheld in Lebus v. Boston, 107 Ky., 98; Daniels v. Baxter, 112 Ky., 334; Henry v. Koch, 80 Ky., 391; Burwell v. Hobson, 65 Am. Dec., 247.

But it is contended that at the time of the severance of the title in 1900 the store house on the residence lot was not standing and was not in use, having been burned in 1896, and was not reconstructed by the appellant until after he became the owner of the residence lot. But the evidence is that the foundation and cellar of the original store house remained there and were used by appellant

in the subsequent reconstruction. This had been the location of a general store for a long number of years as well as the post office of the village, and it is not unreasonable that it should have been assumed at the time of the severance of the title, considering the importance of this location to the industries near it, that the store house would be reconstructed. All the facts and circum- stances in the record show that all the community had for years used, without question, this passway, and that it had been used by all the occupants of these two lots for more than 40 years; for the first time in 1913, after appellee became the owner of the small lot, was the right to close it asserted. We conclude therefore that upon the severance of the title there was an implied grant in appellant's conveyance to the use of this passway, and that it was improperly obstructed.

The lower court was of opinion that the evidence showed that the use by appelle of a small part of his lot, near and in front of appellant's store house, for the purpose of shoeing horses, etc., was conducted in such a way as to be a private nuisance to the appellant and the customers of his store, and an examination of the evidence, we think, justifies that conclusion.

The judgment is reversed on the original appeal with directions to enter a judgment conforming to this opinion; and it is affirmed on the cross appeal.