## Holbrook et al. v. Hammond.

Feb. 8, 1946.

L. M. Ackman for appellants.

James L. Vallandingham and Marion Rider for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to February 18, 1916, A. L. Hammond owned a rectangular shaped farm in Owen County, Ky. For a distance of about 2,000 feet along the west line of the farm ran a public road known as "Pleasant Ridge and Mt. Carmel Road." On the day indicated he conveyed 94 acres off the eastern portion of his tract to J. H. Howell and Ed Roland jointly. On March 1, 1917, Howell and Roland conveyed the same 94 acres to appellants, Katie Hammond and husband, Charlie Hammond. Later the wife acquired the entire tract. In the deed to Howell and Roland the grantor, A. L. Hammond, also stipulated that "* * * A twelve (12) ft. road is granted H. H. Howell and Ed Roland from the land herein conveyed over the land of A. L. Hammond, starting at an

ash tree in the Roland line running up the ridge to the Pleasant Ridge and Mt. Carmel Dirt road running back to the land herein conveyed. This right of way is for the use and benefit from the land herein conveyed.''

That passway was for the purpose of furnishing an outlet to the vendees from their tract to the public road. The deed Howell and Roland executed to appellants in 1917 also expressly conveyed the 12-foot easement which A. L. Hammond had created across the remaining portion of his tract. On and prior to the date of the conveyance to Howell and Roland there was a fence running east and west about midway of the remnant of A. L. Hammond's tract, after conveying the 94 acres to his vendees, and about midway of that fence was a gate. Soon after the conveyance to Howell and Roland another fence was built paralleling the old one just 12 feet from it, thereby laying off the conveyed easement which location all parties appear to have accepted and agreed to. In the building of the new fence a gate was made in it about opposite the gate in the old fence, thus affording A. L. Hammond a means whereby he could cross the passway from one portion of his tract to the other one. There is testimony in the case that Charlie Hammond, appellee's husband, assisted in the construction of that fence, as well as the gate as a part of it.

On March 10, 1920, A. L. Hammond and wife conveyed to the Holbrooks the balance of his entire tract consisting of about 88 acres, which was the servient estate to the 12-foot passway across it, following which the second fence mentioned was built. Sometime after the 94-acre tract was acquired by appellee and her husband they began to object to the Holbrooks using the passway for *any purpose whatever,* not even the right to cross it through the two gates mentioned in order to reach the different portions of their tract. They also objected to the Holbrooks traveling the passway longitudinally for any legitimate purpose of their own. Finally a warrant was obtained against the tenant of appellants who had used the passway for a legitimate purpose of the servient estate without interfering with the granted use of it by appellee. The record does not show what became of that alleged trespass prosecution.

The row and dispute over the right of appellants to

use the passway for any legitimate purpose continued with appellee occasionally tearing out or nailing up the gate put into the new fence. The quarrel eventually resulted in appellants filing this action in the Owen circuit court against appellee, and in their petition they set out the facts as herein stated, and prayed for a perpetual injunction "requiring the defendant herein, Katie Hammond, to abstain from all efforts or actions or threats against these plaintiffs or their agents, denying to the said plaintiffs the free and uninterrupted use of said two gates and the said twelve foot passway and from intimidating these plaintiffs and their employees in the use of said gates and passway in the usual and reasonable practices of good husbandry; for plaintiff's costs herein expended * * *".

Defendant answered by denying the right of plaintiff (appellant here) to use the passway for any of the purposes stated, since they also alleged that in A. L. Hammond's deed to Howell and Roland (their vendors) conveyed an absolute fee simple title to the area of the 12-foot passway, and not merely an easement appurtenant to, and for the benefit of their land as the dominant estate. In another paragraph they counterclaimed and asked that plaintiffs, and appellants, be enjoined and restrained "from trespassing upon, over, along or across said 12-foot passway, or from cutting, breaching or injuring the fences abutting same." Considerable evidence was taken by both sides, and the court on final submission dismissed plaintiffs' petition, thereby denying the injunction sought by them. It then sustained defendant's, and appellee's, prayer for an injunction restraining plaintiffs from doing any of the things mentioned in the judgment, and from that judgment appellants prosecute this appeal.

While not expressly so stated in the judgment, we can imagine no ground upon which the court could have based it, except that he construed the deed creating the passway as conveying an absolute title to A. L. Hammond's vendees, Howell and Roland, in and to the area of the passway. If such conclusion was the one arrived at by the court (and we can surmise no other.), it was clearly erroneous under all texts and the decisions of this and other courts to which we have had access.

The record furnishes no evidence of any modifica-

tion of the rights in and to the passway of either the dominant or servient owners, thereby limiting the question for determination to one of law as to the proper construction of the language of the deed creating the passway. It will be seen that the creating language did not attempt to convey the land over which the passway ran, but only to create a "road * * * from the land herein conveyed over the land of A. L. Hammond * * *. This right of way is for the use and benefit from (for) the land herein conveyed." (Our parenthesis and emphasis).

This court in the early case of Maxwell v. McAtee, 9 B. Mon. 20, 48 Am. Dec. 409, determined against the contention of appellees—as well as against the judgment of the court appealed from—and which case involved almost completely parallel facts to those involved in this case, although there appeared therein some dispute as to whether the passway involved therein was originally created by writing or rested only in parol. But assuming that it was created by writing, then the court in so disposing of the question said:

"Conceding that the agreement for the passway was in terms equivalent to a grant, and that the parol grant of a passway for five years was valid, still it is evident that the general grant of a passway, or right of way, over the land of the grantor at a particular place, does not confer either the possession or the right of possession of the land, but the mere right of way, or of passing over it. And nothing passes as incident to such a grant, but that which is necessary for its reasonable and proper enjoyment (3 Kent's Com. 420;) Lyman v. Arnold [Fed. Cas. No. 8, 626], 5 Mason 195. Notwithstanding such a grant, there remains with the grantor the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted. And for the same reason, the exercise of any of them cannot be complained of by the grantee, who can claim no other limitation upon the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment."

The same principle is stated in the text of 17 Am. Jur. 998, sec. 101, which says: "The creation of a private way does not take from the owner of the land over which it passes any portion of the fee of the soil. Regardless of how acquired, a private way carries with it by implication only such incidents as are necessary to its reasonable enjoyment. The owner of the land has the right to use the way for any purpose whatever, provided he does not interfere with the right of passage resting in the owner of the easement. Hence, the grant of a right of way, which is not exclusive in its terms and which can be reasonably enjoyed without being exclusive, leaves in the grantor and his assigns the right of user in common with the grantee. The owner of the servient tenement may sow crops on the right of way if such action does not interfere with the rights of the owner of the dominant tenement."

In notes 9, 10, 11 and 12 to that text are listed cases from almost every state of the Union approving the rights of the parties to such relationship, as being those embodied in the text. In 136 A. L. R. 379 an annotation begins on the question of "Deed as Conveying Fee or Easement." The annotation covers 34 pages in which the identical question here involved, i. e., the granting of a passway by deed, is exhaustively considered, and in which a prior annotation in 132 A. L. R. 142 is referred to. The burden of the text of the annotations is, of course, that the question is to be resolved by ascertaining the intention of the parties as gathered from the language creating the passway. It is pointed out therein that a fee will not be construed to have been granted to the dominant estate owner, even though the language creating the passway employs the word "land" provided it is shown that the intention was to grant only a "road, alley, street or passway." In this instant case the creating language contains the word "road" and the words "for the use of" the grantees, and the passway is to run *"over* the land of A. L. Hammond" (our emphasis) which it could not do if A. L. Hammond had previously divested himself of title to the strip over which the passway ran.

The cases of Reed v. Flynn, 205 Ky. 783, 266 S. W. 644; Raisor v. Lyons, 172 Ky. 314, beginning on page 316, 189 S. W. 234, and Rupp v. Hickman, 271 Ky. 708, beginning on page 716, 112 S. W. 2d 1023, approve, adopt

and administer the interpretation contained in the cases and texts supra, and in the Rupp case the Maxwell case is expressly relied upon for such interpretation. We have found no case, nor has there been one cited by counsel, in which a different interpretation was made under the same or similar creating language, as is found in the instant one. Nor have we been able to find any contrary text.

Wherefore, the judgment is reversed with directions to set it aside and to enter one granting the injunction prayed for by plaintiffs, and appellants, and dismissing the counterclaim of defendant, and appellee, and for such other necessary orders as are not inconsistent with this opinion.