Royce C. PULLIAM, Appellant,

v.

Eugene S. WIGGINS and Morris
Rozen, Appellees.

Court of Appeals of Kentucky.

Dec. 1, 1978.

Rehearing Denied Feb. 2, 1979.

Discretionary Review Denied
May 15, 1979.

David E. Melcher, John Swinford, Swinford & Sims, Cynthiana, for appellant.

Irene C. Steen, Wiggins & Steen, John D. Sword, Sword & Floyd, Richmond, for appellees.

Before HAYES, HOWERTON and LESTER, JJ.

LESTER, Judge.

This is an appeal from the denial of a permanent injunction by which plaintiff-appellant sought to prohibit defendants-appellees from leasing or selling land in a shopping center upon which there was to be a competing business maintained.

Sometime prior to 1967, Royce C. Pulliam attempted to buy a plot of land at the intersection of Lancaster Avenue and Richmond By-Pass Road in Richmond, Kentucky, from Earl B. Baker, the latter party then commencing development of his twenty acre plus tract. Before the transaction

could be made, Baker found himself in financial difficulties, so he sold the property to a partnership which had as its trustees and operating managers the appellees, Wiggins and Rozen. It was Pulliam's intention to install and operate a Frisch's Big Boy drive-in restaurant facing on Lancaster Avenue at a point where it intersected with the By-Pass Road.

In their representative capacity and as part owners, Wiggins and Rozen started planning and later developing upon the Baker property what was to become known as University Center which, as a practical matter, was a shopping center. Pulliam leased the necessary ground from appellees on November 11, 1967, which was prior to any shopping center construction. Appellant drafted the lease. In order to get financing for his drive-in, appellant assigned his lease and mortgaged his improvements to the National Bank of Cynthiana.

The partnership, for whom appellees were trustees, which owned the shopping center consisted of, among others, Wiggins, Rosen, John Sword, Stanley Wylie, Ila Wylie, R. C. Tussey and two or more corporations. On May 4, 1970, appellees, in their trustee capacity, deeded the land upon which appellant's restaurant was situated to Stanley Wylie, Ila Wiley and R. C. Tussey, which conveyance was subject to appellant's lease. Some four and a half years later, on November 13, 1974, the Wylies and Tusseys conveyed the ground to Pulliam, with a portion of the deed providing that:

This property is subject (a) To the leasehold estate granted by first parties to Royce C. Pulliam by lease dated November 11, 1967 and recorded in Lease Book 11, Page 67, Madison County Court Clerk's Office.

When appellant drafted his lease in 1967, he inserted as clause 17 a restriction to the effect:

17. *Restrictions.* It is understood and agreed that the Lessee is to build a drive-in restaurant of the Frisch's Big Boy type and the Lessors agree and covenant that neither they, their heirs, assigns or nominees shall lease, assign or sell any other property owned by the Lessors and purchased from Earl B. Baker et al located on the Lancaster Road or Eastern By-Pass in Richmond, Kentucky, for a similar type business. Lessors reserve the right to not more than one McDonald type restaurant on all of said property and to have other restaurants with inside service, provided that same shall be located in the shopping center proper.

Not long after Pulliam acquired title to his property he received the following letter, dated May 29, 1975, from Wiggins:

May 29, 1975

Hon. Royce C. Pulliam
Attorney at Law
Elks Building
Cynthiana, Kentucky 41031
Dear Royce:

Morris Rozen and I, as co-trustees, are in the process of completing a Lease Agreement under which we will lease the lot between Long John Silver's and the Self-Service Gas Station for use as a "Bonanza Steak House". This will be a restaurant operation with inside service and not a drive-in or carry-out type food operation.

Under the proposed Lease Agreement with these new tenants, we will pay a substantial part of, if not all of, the improvements to be constructed upon the demised property. It is our opinion that construction cost will greatly increase in the next few months and in order to avoid this increase we must proceed with construction within the next few days.

My purpose in writing this letter to you is to make you aware of our intentions as mentioned above so that if you believe we do not have the legal right to enter into this most advantageous lease you can immediately institute legal proceedings against us. Not hearing from you within the next ten days we will assume that you do not legally contest our right to make said lease, and we will act accordingly.

To make our position clear to you, we are sure that the restrictions in the lease we at one time had with you would not

prohibit us from leasing our property for a restaurant catering to inside service. Furthermore, assuming such a restrictive covenant in a lease could be enforced in the face of recent anti-trust monopoly cases, it is our information that you have now purchased the property we formerly leased to you thereby causing a merger of the leasehold estate into the fee simple estate thereby eliminating the burdens and benefits of the Lease Agreement.

Please understand that our position in this matter is unyielding short of a Court Judgment, and that any delay would cause us great economic loss for which we would seek recovery.

Very truly yours,

/s/ Eugene S. Wiggins

ESW/js

cc: Morris Rozen

Dwight Groeman

Appellant replied that he thought there was "a definite question of appellee's right to build another free standing restaurant" in the shopping center, so on October 24, 1975, he filed his complaint in the Madison Circuit Court which had as its basis, clause 17 of the 1967 lease.

The trial court sustained the defendants-appellees' motion for summary judgment and in its entry held that the lease, a certain agreement between the parties of May, 1969, and the deed all merged into the fee grant instrument and that the particular restrictions sought to be retained were nullities because there was no express reservation thereof. The court defined "shopping center proper" and found that the Bonanza Steakhouse was within the geographical ambit of the center. The court further determined that the Bonanza lessees were necessary parties.

The first assignment of error is the trial court's application of the doctrine of merger. Under that theory of law, the lower tribunal determined that when appellant acquired the fee simple title to the Frisch's Big Boy site that the provisions of the 1967 lease were merged therein and thus became nullities.

The theory of merger of estates arose out of the rule in *Shelley's Case*, 1 Co. 93b (1579–81) and has long been recognized in this jurisdiction. *Logan v. Steele*, 7 T.B.M. 101 (1828). One of the most succinct statements of the doctrine is found in *Larmon v. Larmon*, 173 Ky. 477, 191 S.W. 110, 112 (1917) quoting from Blackstone to the effect that:

"Whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, it is said to be merged, that is, sunk or drowned in the greater. Thus, if there be a tenant for years, and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance, and shall never exist any more."

(Citations Omitted)

To constitute a merger it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right. Blackstone, supra; 10 R.C.L., P. 666; 16 Cyc. 667. While the rule is said to be inflexible at law equity will prevent or permit a merger of estates according to the intention of the parties and to protect the beneficial interests of the holder of the two estates. 2 Pom. Eq. Jur. (3d Ed.) § 788.

However, there can be no merger where it is contrary to the intention of the parties. *Watson v. Trimble*, 261 Ky. 253, 87 S.W.2d 359 (1935).

When appellees conveyed the land in question to the Wylies and the Tusseys and when they deeded to Pulliam, both instruments contained the language hereinabove set forth which had the effect of incorporating by reference the provisions of the lease into the deeds. We can conceive of no reason why the parties would have inserted the language unless it was their intention that the provisions of lease remain in effect and not merge into the deed thereby losing their identity. Appellees urge us to adopt the position of *Rayburn v. Stewart Calvert Co.*, 105 Wash. 575, 178 P.

455 (1919), that only the specified wording contained in that opinion would have the effect of retaining in one instrument the provisions of another, but we believe that any phrases or sentences that express the intention of the parties is sufficient to obviate the merger.

■ The next significant question presented for our determination is what is meant by the restrictions contained in paragraph 17 of the 1967 lease. After prohibiting appellees from permitting another "Frisch's Big Boy type" of restaurant to open on the property acquired from Earl B. Baker, the clause goes on to say:

> Lessors reserve the right to not more than one McDonald type restaurant on all of said property and to have other restaurants with inside service, provided that same shall be located in the shopping center proper.

Attorney-appellant was the drafter of the document and it is axiomatic that a contract must be construed more strongly against the party who prepared it. *Boyd v. Phillips Petroleum Company*, Ky., 418 S.W.2d 736, 738 (1966).

It is not argued that the Bonanza Steakhouse operation is not an inside service restaurant nor is it urged that it is a similar type establishment as a Frisch's. What is advanced is that Bonanza is situated on the north side of the complex (entering from Lancaster Avenue) in a row of buildings immediately behind appellant's drive-in which should not be considered as being in the "shopping center proper." Pulliam's position is that the row of business houses on the south side of the connecting parking area (which structures face those wherein the steakhouse is located) is the shopping center proper, thus prohibiting appellees from placing the new restaurant in any place other than on the south side. Appellant's testimony is quite uncertain as to what the developers of the center represented to him could comprise the future shopping center, and if he was unsure of the situation, we certainly cannot provide the facts necessary to sustain his position. It would be unrealistic, however, to say that a developer would construct a row of buildings on either side of a large parking area and then say one cluster of commercial establishments on one side of the vehicular area is in the shopping center while its counterpart on the other side is not part of the center.

■ The learned trial judge defined "shopping center proper" as the developed area, reachable by motor vehicles regularly visiting the shopping center by established roads and parking areas, as opposed to the undeveloped area or reserved area behind or away from the built up area. We do not believe we can improve upon the foregoing for the purposes of this appeal, but we direct interested parties attention to a group of definitions of shopping center collected in the 1978 cumulative annual pocket part (p. 46) of 39 *Words and Phrases,* "Shopping Center" and particularly those contained in *Homer v. Dadesland Shopping Center, Inc.*, Fla., 229 So.2d 834, 836 (1969) and *Dupont v. Planning and Zoning Commission of Town of Stratford,* 156 Conn. 213, 240 A.2d 899 (1968). Therefore, regardless of what side of the parking area the Bonanza is located, we hold that it is in the shopping center proper. Moreover, since the steakhouse is an inside service type of restaurant, then there is nothing violative of the restriction contained in the lease.

The restriction involved herein is one designed to either eliminate drive-in competition and limit other types of food establishments in the same shopping complex. Our court of last resort has adopted the view in *Keyes v. Carrick,* Ky., 268 S.W.2d 397, 402 (1954) that:

> It is an elementary rule of construction that a covenant or agreement by a lessor not to lease the retained property for the purpose of conducting a business in competition with the lessee must be positively expressed and, being in restraint of trade, must be strictly construed. The words relied upon as creating such a covenant should not be extended beyond their literal meaning, and if two constructions are possible, the one which does not limit the

use of the property should be adopted. 51 C.J.S., Landlord and Tenant, § 238, p. 865.

With the resolution of the foregoing issues, we find it unnecessary to respond to other points raised by the parties with the exception of the comment that we find no error in the granting of summary judgment by the circuit court and no violation of CR 56.

The judgment is affirmed.

All concur.