Richard MEADE;  and Earnestine
Meade, Appellants,

v.

Michael GINN;  and Jennifer
Ginn, Appellees.

No. 2002–SC–0518–DG.

Supreme Court of Kentucky.

Nov. 18, 2004.

Rehearing Denied April 21, 2005.

Kimberly Leet Razor, Flemingsburg, KY, Counsel for Appellants.

Darrell K. Ruark, Flemingsburg, KY, Counsel for Appellees.

COOPER, Justice.

Appellants, Richard and Earnestine Meade, own a 131.045 acre tract of land in the Hilltop community of Fleming County, Kentucky. The northern boundary of this tract fronts on Kentucky Highway 1123. A substantial portion of its western boundary borders the eastern edge of a fifty-foot-wide roadway located on a 78.181 acre tract of land owned by Appellees, Michael and Jennifer Ginn. The roadway connects Highway 1123 to an old thirty-foot-wide roadway that crosses another 18 acre tract owned by the Ginns and leads to the southern portion of the Meades' property that borders on or near the North Fork of the Licking River. The Meades claim that the terrain of their property prevents easy access between its northern and southern portions and, consequently, they used both roadways for many years to access the southern portion of their property for farming purposes. In 1998, the Ginns closed the fifty-foot roadway by erecting a gate at its terminus with Highway 1123. The Meades filed this action in the Fleming Circuit Court claiming easements over both roadways and demanding compensatory damages for their loss of access to the southern portion of their property. The Ginns admit the Meades own an easement over the thirty-foot roadway that traverses the 18 acre tract but contest the Meades' right to use any portion of the fifty-foot roadway to reach that easement. The Fleming Circuit Court held that the Meades never acquired an easement over the fifty-foot roadway because no such easement was mentioned in their 1983 deed. The Court of Appeals disagreed, but held that when the Ginns became owners of both the 18 acre tract and the 78.181 acre tract, the dominant and servient tenements merged, thereby extinguishing the easement and the Meades' right to use it. For the reasons explained herein, we conclude that the right to use the fifty-foot roadway has been an easement appurtenant to the Meades' property since September 1, 1978, and, in that respect, the Meades' property is the dominant tenement and the Ginn's 78.181 acre tract is the servient tenement. Since the Ginns have never owned the Meades' property, the easement appurtenant to that property has never merged with the servient tenement.

## I. THE 18 ACRE TRACT AND EASEMENTS.

These three tracts, *i.e.*, the Meades' 131.045 acre tract and the Ginns' 18 acre and 78.181 acre tracts, were all originally part of an 800 acre farm sold by W.M.

Wheeler on December 30, 1975, to Ersel Verdell Meade and Sherry R. Meade, his wife, Richard Gale Meade (Appellant) and Linda Louise Meade, his then wife, Kenneth Dale Meade and Diane Ellen Meade, his wife, Lanny Ray Meade and Jill Ellen Meade, his wife, Oliver G. Berry, single, and Tate A. Meade and Opha Meade, his wife, referred to collectively as the "Meade families." Each separate family unit owned an undivided 1/6th interest in the entire 800 acres.

The first sell-off from the original 800 acres occurred on December 15, 1977, when the Meade families, including Appellant, Richard Meade, deeded the 18–acre tract now owned by the Ginns to Licking Pork, Inc. The remainder of the original 800 acres completely surrounded this almost square-shaped tract, on which Licking Pork subsequently established a hog farm. The 18 acre tract straddled an old thirty-foot-wide roadway that ran from the southern portion of the 800 acre tract, now part of the 131.045 acre tract owned by Richard and Earnestine Meade, to its northern boundary with Highway 1123. Although the December 15, 1977, deed from the Meade families to Licking Pork, Inc., is not found in this record, the parties agree that the deed reserved an easement in favor of the "grantors herein [Meade families], their heirs and assigns, for the purpose of crossing said 18 acre tract from its entrance road."

Also on December 15, 1977, the Meade families, including Appellant Richard Meade, entered into a written agreement with Licking Pork, Inc., that provided, *inter alia*:

> [W]hereas, Grantors have this date sold and conveyed to Grantee an eighteen acre portion of Grantors' farm located on Kentucky Highway No. 1123 in Fleming County, Kentucky; and Whereas, the parties desire to agree as to appur-

> tenant rights of access, utility easements, water easement, house location, fencing, and other related matters, before surveys have been completed;

> NOW THEREFORE, in further consideration of the $20,000 paid this date by Grantee unto Grantor, it is hereby agreed as follows:

> . . .

> (2) Entrance Road and Utility Easement. Grantors will upon demand convey by Grantee's survey description an unencumbered marketable easement by general warranty deed for purposes of free ingress and egress and utility services between Kentucky Highway No. 1123 and said eighteen acre tract this date conveyed, said easement to be fifty feet wide and located as determined by Grantee in a reasonably direct route from highway to Grantee's said property. Grantee shall construct and maintain a roadway on said easement, and may construct, repair and replace utility services over, under and through said easement, as well as grant easements within said roadway to utilities for servicing Grantee's said property, provided that Grantors' abutting property is not thereby affected or encumbered. *Grantors, their heirs and assigns, may use said roadway in common with Grantee and may cross over said easement between their abutting fields,* provided that Grantors may not obstruct or otherwise interfere with Grantee's use of said easement as aforesaid.

(Emphasis added.) The agreement also required the Meade families to convey, on demand, one additional acre for a residential lot, another lot on the Licking River for construction of a water pumping station, and a water line easement from the pumping station to the 18 acre tract. The agreement was filed of record in Deed

Book 145, page 274, in the office of the Fleming County Clerk.

On September 1, 1978, citing "paragraph 2 of Agreement recorded in Fleming County Deed Book 145, page 274," and "in consideration of said Agreement," the Meade families, including Appellant Richard Meade, deeded to Licking Pork, Inc., "[a] certain fifty foot easement connecting Kentucky Highway No. 1123 with Tract A [the 18 acre tract], the centerline of which is described as [described therein by metes and bounds]." The deed also conveyed a one acre residential lot, a lot on the Licking River for a water pumping station, and a water line easement from the pumping station to the 18 acre tract. The deed contained the following recitation:

> Reference is hereby made to said Agreement dated 15 December 1977 and recorded in Fleming County Deed Book 145, page 274 *for the rights* and duties *of the parties with respect to the above described* property and *easements*.

(Emphasis added.)

Thus, the documents executed by the Meade families and Licking Pork, Inc., not only created a fifty-foot easement across the remainder of the Meade families' 800 acre tract in favor of Licking Pork, but also reserved to the Meade families an easement over the thirty-foot roadway across Licking Pork's 18 acre tract and the right to use the fifty-foot easement "in common with Grantee." Since owners of a servient tenement automatically retain the right to use their own property so long as their use does not interfere with the use of the dominant tenement, *Holbrook v. Hammond*, 302 Ky. 10, 192 S.W.2d 746, 748 (1946) ("It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted."), the Meade families would have retained the right to use the fifty-foot roadway even without the agreement. The parties, therefore, must have intended to create a transferable reciprocal or cross easement in favor of the Meade families by their additional agreement vesting in the "grantors, their heirs and assigns" the right to use the fifty-foot roadway "in common with Grantee." *Cf. Furlow v. Sturgeon*, Ky., 436 S.W.2d 485, 486 (1968) (contracts must be construed from the standpoint of the parties, and the terms employed must be given effect from that standpoint). Reciprocal or cross easements are created by contract between adjacent landowners for the common use of property to enhance the usefulness and value of both properties, usually with respect to ingress and egress. The result is the creation of easements appurtenant to both properties enforceable by subsequent grantors of each original owner. *Rosenbloom v. Grossman*, 351 S.W.2d 735, 738 (Mo.1961); 25 Am.Jur.2d *Easements and Licenses in Real Property* § 21 (1996); *cf. Romar Dev. Co., Inc. v. Gulf View Mgmt. Corp.*, 644 So.2d 462, 465 (Ala.1994) ("[T]he usual case presents the 'reciprocal easement' situation, where adjacent landowners contract for the common use of some property or area...."). Our predecessor court recognized the concepts of both reciprocal and cross easements.

> There can be no dispute of the easement claimed being annexed to the lot conveyed by Graham, Howarth & Graham to Newton, and consequently following it into the hands of appellant, for it was not only in express terms thereby granted, but in the subsequent deed to Atchinson specially reserved, in place or consideration of which the Newton lot was charged with a reciprocal easement ever since enjoyed.

*Hobson v. Cartwright,* 93 Ky. 368, 20 S.W. 281, 281 (1892) (agreement establishing set-back lines and building heights).

> "[T]he decided weight of authority establishes the position that an agreement under the hands and seals of such parties containing the usual covenants and stipulations will, when duly delivered and acted upon, create cross-easements in the respective owners of adjacent lots with which the covenants in the agreement will run, so as to bind all persons succeeding to the estates to which such easements are pertinent."

*Ferguson v. Worrall,* 125 Ky. 618, 101 S.W. 966, 968 (1907) (agreement establishing joint driveway) (quoting *Jones on Easements* § 668).

To summarize, the effect of the deed and agreement executed on December 15, 1977, and the subsequent deed executed on September 1, 1978, with respect to the easements was (1) to grant Licking Pork, Inc., an easement across the Meade families' property on which it could construct a fifty-foot roadway to provide access to the 18 acre tract, and (2) to reserve to the Meade families a thirty-foot easement across the 18 acre tract and a reciprocal right to use the fifty-foot roadway as access to the remaining portions of their property.

On June 21, 1984, the master commissioner of Fleming County deeded Licking Pork's interest in the 18 acre tract to A.J. DeCoster. On October 23, 1998, DeCoster and his wife conveyed the same tract to Appellees, Michael and Jennifer Ginn. Both deeds recite the reservation by the Meade families of the thirty-foot easement "for the purpose of crossing said eighteen-acre tract from its entrance road (as located pursuant to the Agreement between the parties dated 15 December 1977 and recorded in Fleming County Deed Book 145, page 174) to former Grantors' [Meade families'] retained land on the River side of said eighteen-acre tract." In addition to the 18 acre tract, both deeds also conveyed the one acre residential tract, the pumping station lot, the water line easement, and the fifty-foot easement connecting the 18 acre tract with Highway 1123. Although the deed from DeCoster to Ginn did not mention the December 15, 1977, agreement, the stated source of title, *i.e.*, the commissioner's deed to DeCoster, stated as its source of title for the fifty-foot easement the deed from the Meade families to Licking Pork, Inc., which, as noted *supra*, specifically referred to paragraph 2 of the agreement which gave the Meade families and their "heirs and assigns" the right to use the easement "in common with Grantee."

By three separate deeds, all dated March 26, 1983, the Meade families sold off the remainder of the original 800 acre farm. The first deed conveyed to Ersel and Sherry Meade the 5/6ths interest of the other families in a 128.395 acre tract not involved in this lawsuit. (Actually, it is unclear from the record whether this tract was part of the original 800 acre farm or whether it was a separate farm owned by the Meade families.)

## II. THE 131.045 ACRE TRACT.

The second March 26, 1983, deed conveyed to Appellant Richard Meade and his then wife Louise Meade the 5/6ths interest of the other families in 131.045 acres lying east and south of the fifty-foot roadway and the 18 acre (Licking Pork) tract. This deed recited that it was part of the original 800 acre farm purchased from Wheeler. As noted *supra*, the deed also specifically recited a grant of the thirty-foot easement across the Licking Pork tract but did not specifically mention the fifty-foot roadway across the Meade families' remaining property. The deed did,

however, refer to the December 15, 1977 agreement, *viz:* "See also Agreement between grantors dated December 15, 1977, and recorded in D.B. 145, Page 274, Fleming County Court Clerk's Office," and did contain the usual habendum language, "together with all and singular the rights, privileges and appurtenances thereunto belonging...." Louise Meade later conveyed her interest in the tract to Richard Meade.

The absence of a specific reference to the fifty-foot roadway in the deed to Richard and Louise Meade was the basis for the Fleming Circuit Court's conclusion that the right to use the fifty-foot roadway was not an easement appurtenant to the 131.045 acre tract. Neither the circuit court nor the Court of Appeals addressed whether an easement over the roadway fell within the "rights, privileges and appurtenances thereunto belonging" to the 131.045 acre tract.

### III. THE 78.181 ACRE TRACT.

By the third March 26, 1983, deed, the Meade families, including Richard Meade, conveyed the remainder of the original 800 acres, including the 78.181 acre tract containing the fifty-foot roadway, to William M. Stewart and Norma S. Stewart, his wife, and Alexander C. Stewart and Pamela S. Stewart, his wife. The deed purported to describe by metes and bounds all of the 800 acres (assuming none of the original 800 acres were conveyed to Ersel and Sherry Meade) with seven enumerated exceptions. The first five exceptions all pertained to the conveyances made to Licking Pork, Inc., pursuant to the deed and agreement of December 15, 1977. Exception No. 1 ("Tract A") was the 18 acre tract. Exception Nos. 2, 3 and 5 ("Tracts B, C, and E") were, respectively, the one acre residential lot, the pumping station lot, and the water line easement. Excep-

tion No. 4 ("Tract D") was the fifty-foot easement that is the subject of this action. Exception No. 4 refers specifically to "paragraph 2 of Agreement recorded in Fleming County Deed Book 145, Page 274." After identifying the first five exceptions, the deed contains the following recitation:

Reference is hereby made to said Agreement dated December 15, 1977, and recorded in Fleming County Deed book 145, Page 274 for the rights and duties of the parties with respect to the above described property and easements....

That, of course, was the same recitation contained in the September 1, 1978, deed that conveyed the fifty-foot easement to Licking Pork, Inc. Exception No. 6 to the Stewarts' deed ("Tract F") was the 131.045 acre tract deeded to Richard and Louise Meade. Exception No. 7 was the thirty-foot easement across the 18 acre (Licking Pork) tract described in Exception No. 1 ("Tract A"). The reasons for excluding this easement from the deed to the Stewarts may have been because (1) William Stewart was also the president of Licking Pork, Inc., and (2) the easement across the 18 acre tract served only other property conveyed to the Stewarts and the 131.045 acre tract conveyed to Richard and Louise Meade, whose deed specifically included the thirty-foot easement.

On January 29, 1987, the master commissioner deeded all of the property acquired by the Stewarts from the Meade families, including the 78.181 acre tract, to Nick Crain. On July 31, 1995, Nick Crain and his wife deeded the property to Wayne Crain. Both of the Crains' deeds recited the same exceptions recited in the Stewarts' deed and both made the same references to the December 15, 1977, agreement. Wayne Crain had the entire property resurveyed and, on April 2, 1997,

sold a portion of the property, including the 78.181 acre tract, to Billy and Mona Sapp. Unlike the Crains' deeds, the Sapps' deed recited only that the 78.181 acre tract was "subject to a 50–foot Entrance and Utility Easement to provide access to Licking Pork, Inc. (D.B. 145, Pg. 286 [deed from the Meade families to Licking Pork])." Although no reference was made to the December 15, 1977, agreement, the Sapps' deed recited that "[t]he above described easement is the same Entrance and Utility Easement Exception # 4 Tract 'D' recorded in Deed Book 183, Page 182 [deed from Nick Crain and wife to Wayne Crain]," which specifically referred to the agreement. On August 13, 1998, the Sapps deeded their property, including the 78.181 acre tract, to the Appellees, Michael and Jennifer Ginn. When the Ginns later obtained title to the 18 acre tract, they owned both the tract containing the fifty-foot roadway and the tract to which the roadway leads. This was the basis for the Court of Appeals' conclusion that the merger of the dominant and servient tenements extinguished the easement. *See Pulliam v. Wiggins,* Ky. 580 S.W.2d 228, 230 (1978).

## IV.   EASEMENT IN GROSS.

■   Grantors, their heirs and assigns, may use said roadway in common with Grantee and may cross over said easement between their abutting fields . . .

At worst, this language in the December 15, 1977, agreement vested the Meade families, including Appellant Richard Meade, with an easement in gross over the fifty-foot roadway. This appears to have been the conclusion of the Court of Appeals, which held that the Meade families retained an easement over the fifty-foot roadway even after 5/6ths of the families had sold all their interests in the original

800 acre farm. But if so, the Court of Appeals erroneously concluded that the merger of the 18 acre and 78.181 acre tracts extinguished their easements.

[A]n easement in gross is a mere personal interest in or right to use the land of another. It is attached to and vested in, the person to whom it is granted. In fact, the principal distinction between an easement in gross and an easement appurtenant is that in the first there is not, and in the second there is, a dominant tenement to which it is attached.

25 Am.Jur.2d, *Easements and Licenses in Real Property* § 11 (1996). *See also Inter–County Rural Elec. Co-op. Corp. v. Reeves,* 294 Ky. 458, 171 S.W.2d 978, 983 (1943) (an easement appurtenant is owned by the dominant tenement, not the owner of the tenement, whereas an easement in gross is personal to the grantee). Since an easement in gross is not owned by the dominant tenement, a merger of the dominant and servient tenements would not extinguish it.

■   An easement in gross acquired by prescription cannot be assigned. *Thomas v. Brooks,* 188 Ky. 253, 221 S.W. 542, 543 (1920). If, *e.g.,* Appellants Richard and Earnestine Meade owned only a prescriptive easement in gross over the fifty-foot roadway, a sale of the property to a subsequent purchaser would not include ownership of the easement. However, if acquired by contract, as here, it may be made assignable by the terms of the instrument creating the right. 25 Am. Jur.2d, *Easements and Licenses in Real Property* § 102 (1996). The terms of the written agreement of December 15, 1977, created a reciprocal easement that was both inheritable and assignable.

■   Nevertheless, "[i]t is the general rule that easements in gross are not favored, and that an easement will never be presumed to be a mere personal right

when it can fairly be construed to be appurtenant to some other estate." *Martin v. Music,* Ky., 254 S.W.2d 701, 703 (1953). *See also Buck Creek R. Co. v. Haws,* 253 Ky. 203, 69 S.W.2d 333, 335 (1934); *Johns v. Davis,* Ky., 76 S.W. 187, 189 (1903). Because the easement over the fifty-foot roadway can fairly be construed to be an easement appurtenant to the 131.045 acre tract, we conclude that it is not an easement in gross.

## V. EASEMENT APPURTENANT.

■■■■■ The Meade families acquired the right to use both the fifty-foot roadway and the thirty-foot easement across the 18 acre tract at a time when the families owned all of the land on both sides of the fifty-foot roadway and all of the land served by use of the thirty-foot easement.

> "The rule is general that, where one conveys a part of his estate, he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part."

*Stone v. Burkhead,* 160 Ky. 47, 169 S.W. 489, 490 (1914) (quoting *Jones on Easements*). Further:

> "It may be considered as settled in the United States that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents or property which have been created or used by him during the unity of possession...."

*Irvine v. McCreary,* 108 Ky. 495, 56 S.W. 966, 967 (1900) (quoting *Washburn on Easements,* at 81).

No one has disputed that the fifty-foot roadway was reasonably necessary for the Meade families' use of their property located on both sides of the roadway. Thus, when the Meade families conveyed the fifty-foot easement to Licking Pork, Inc., on September 1, 1978, and retained the right to use the roadway "in common with Grantee," the roadway became a reciprocal easement appurtenant to the Meade families' property located on both the east and west sides thereof. Remember, Richard and Louise Meade already owned a 1/6th interest in the 131.045 acres on the east side of the roadway, including the easements appurtenant thereto, before they were deeded the remaining 5/6ths interest owned by the other Meade families. It is also apparent that the conveyance of the other 5/6ths interest in the 131.045 acre tract preceded the conveyance of the 78.181 acre tract to the Stewarts, since the conveyance of the 131.045 acre tract was identified in the Stewarts' deed as an exception to the property conveyed to them. But even if the timing of the deeds had been reversed, such would not have affected the status of the fifty-foot roadway as an easement appurtenant to the 131.045 acre tract. That status had existed since September 1, 1978, when the Meade families deeded the fifty-foot easement to Licking Pork, Inc., subject to the terms of the December 15, 1977, agreement. Thus, it was immaterial that the subsequent deed conveying the other Meade families' 5/6ths interest to Richard and Louise Meade did not specifically recite that ownership of the deeded property included the right to use the adjacent roadway. *See Hatfield v. Hatfield,* 150 Ky. 788, 151 S.W. 3, 4 (1912) ("The purpose of Wooldridge in making the reservation was to retain for himself a way out when he sold the land lying between himself and the public road. This reservation was made for the benefit of the tract which he still owned and afterward sold to William H. Hatfield. It was an appurtenance to that tract and passed to

the grantee of that tract though it is not expressly mentioned in the deed; for, being an appurtenance, it ran with the land."); *Johns v. Davis,* 76 S.W. at 189 ("A right of way is appurtenant to the land of the grantee if so in fact, although not declared to be so in deed.").

Accordingly, the decisions of the Fleming Circuit Court and the Court of Appeals are reversed, and the right to use the fifty-foot roadway lying adjacent to the 131.045 acre tract now owned by Appellants, but within the 78.181 acre tract now owned by Appellees, is held to be an easement appurtenant to the 131.045 acre tract. This action is remanded to the Fleming Circuit Court with directions to conduct further necessary proceedings consistent with this opinion.

GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with LAMBERT, C.J. joining that dissenting opinion.

Dissenting opinion by Justice KELLER.

Because the fifty-foot easement was extinguished when the Ginns acquired the 78.181 acre tract on which the easement was located, I dissent and would affirm the Court of Appeals.

When the Meade families conveyed the 18 acre tract to Licking Pork, they granted Licking Pork a fifty-foot-wide easement across their property to provide access to Highway 1123 from the 18 acre tract, as shown on the following plat:

In granting this easement, the Meade families merely granted Licking Pork the right to pass over land which the Meade families retained ownership of. An easement is not a grant of the land itself, nor is it a setting aside of land for use by others; rather it is simply a grant of an intangible

right to use the land, and nothing more.[1]

This easement was only for the benefit of the 18 acre tract (the dominant tenement, with the Meade families' property being the servient tenement) and, therefore, was an easement *appurtenant only to that tract*. Under well-settled rules of property law, however, this easement was extinguished when the Ginns became the owners of both the 18 acre tract (dominant tenement) and the 78.181 acre tract containing the roadway (servient tenement):

> When one party acquires a fee title to both the servient and dominant estates, the easement merges into the interest of the servient estate and terminates. Thus, any time the party who owns an easement right acquires legal ownership of a servient tenement, the easement associated with that parcel is extinguished. Such unity of possession destroys all existing easements, because a person cannot have an easement on land that he or she owns.[2]

Because a grantor of an easement still has the right of full dominion and use of the land over which the easement is granted, the language in the contract which claims to reserve unto the Meade families the use of the fifty-foot-wide roadway on their property was merely superfluous and did not create an easement appurtenant to the Meade families' property:

> "[T]he general grant of a passway, or right of way, over the land of the grantor at a particular place, does not confer either the possession or the right of possession of the land, but the mere right of way, or of passing over it.... Notwithstanding such a grant, there remains with the grantor the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. *It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted.* And for the same reason, the exercise of any of them cannot be complained of by

---

**1.** *See* 25 AM. JUR. 2D *Easements and Licenses* § 1 (2004) ("An easement is a privilege which one person has a right to enjoy over the land of another for the benefit of the easement holder's land, *but it does not create an interest in the land itself.*" (footnote omitted; emphasis added)).

**2.** 25 AM. JUR. 2D *Easements and Licenses* § 100 (2004) (footnotes omitted); *see Cameron v. Barton*, Ky., 272 S.W.2d 40, 42 (1954) ("Appellant finally contends that the easement in controversy was extinguished by merger when a former owner of the dominant estate bought an adjoining lot which offered a means of ingress and egress to and from the Highway Department's property. The answer to this contention is that *the doctrine of merger could not apply because the former owner of the dominant estate did not acquire the servient estate.*" (emphasis added)); *Sievers v. Flynn*, 305 Ky. 325, 204 S.W.2d 364 (1947) (holding that an easement is not a separate estate when dominant and servient tracts are under the same ownership); *City of Franklin v. St. Mary's Roman Catholic Church*, 188 Ky. 161, 168, 221 S.W. 503, 506 (1920) ("It is equally as thoroughly established that, when the owner of an easement acquires the fee-simple title to the land in which he had the easement, the easement is thereby extinguished...."); *Rogers v. Flick*, 144 Ky. 844, 139 S.W. 1098, 1099 (1911) (citing 2 Washburn on Real Property, 373) ("[A]n easement is not destroyed or extinguished by the union of the dominant and servient estates, *unless the fee in both is acquired and united in the same person.*" (emphasis added)); 25 AM.JUR.2D *Easements and Licenses* § 1 (2004) ("When one party acquires a present possessory fee simple title to both the servient and dominant tenements, the easement merges into the fee of the servient tenement and is terminated."); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.5 (2000) ("A servitude is terminated when all the benefits and burdens come into a single ownership.").

the grantee, who can claim no other limitation upon the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment."

... *"The creation of a private way does not take from the owner of the land over which it passes any portion of the fee of the soil.* Regardless of how acquired, a private way carries with it by implication only such incidents as are necessary to its reasonable enjoyment. *The owner of the land has the right to use the way for any purpose whatever,* provided he does not interfere with the right of passage resting in the owner of the easement. *Hence, the grant of a right of way, which is not exclusive in its terms and which can be reasonably enjoyed without being exclusive, leaves in the grantor and his assigns the right of user in common with the grantee.* The owner of the servient tenement may sow crops on the right of way if such action does not interfere with the rights of the owner of the dominant tenement." [3]

At most, the language reserving the Meade families' right to use the roadway was simply a restatement of this well-settled rule of property law since they had a right to use the roadway located on their property regardless of whether such right was reserved.[4]

Another well-settled rule is that "a person cannot have an easement on land that he or she owns." [5] The majority's approach is untenable in that it not only violates this well-settled rule of property law, but it also creates a novel and unprecedented rule that such an easement is appurtenant to the property located on both sides of the easement even though the property on both sides of it, and on which the easement itself is located, is owned by the same person. This is not the law, never has been, and never should be. The doctrine .of stare decisis is of utmost importance when the issue involves real property, and this Court should not adopt a novel rule of property law, especially when the prior rule has not been shown to be incorrect. Unfortunately, the majority opinion fails to adhere to the doctrine.

The contract language did not create an easement appurtenant to the Meade families' property for two reasons: one, Licking Pork did not own the land on which the fifty-foot roadway was located, and thus, it could not grant the Meade families an easement across it; and two, the Meade families owned the land on which the fifty-foot roadway was located, and consequently, they could not grant themselves an easement.[6] Even if the purpose of the contract language was to reserve an easement, it failed to do so because any ease-

---

3. *Holbrook v. Hammond,* 302 Ky. 10, 13–14, 192 S.W.2d 746, 747–748 (1946) (quoting *Maxwell v. McAtee,* 48 Ky. (9 B. Mon.) 20 (1848); 17 Am.Jur. 998 § 101 (emphasis added)); *also* Restatement (Third) of Property: Servitudes § 4.9 (2000) ("[T]he holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.").

4. *See Holbrook,* 302 Ky. 10, 192 S.W.2d 746 (1946); Restatement (Third) of Property: Servitudes § 4.9 (2000).

5. 25 Am. Jur. 2d *Easements and Licenses* § 100 (2004) (footnote omitted); *see also* 25 Am. Jur. 2d *Easements and Licenses* § 1 (2004) ("A person may not have an easement in his or her own land because an easement merges with the title, and while both are under the same ownership the easement does not constitute a separate estate. It follows that no easement exists so long as there is a unity of ownership of the properties involved." (footnotes omitted)).

6. 25 Am. Jur. 2d *Easements and Licenses* §§ 1, 100 (2004).

ment the Meade families reserved on their own property instantaneously merged with the title to the property and was extinguished.[7]

Quite simply, the Meade families should not have conveyed the fifty-foot strip of land on which the easement is located or they should have expressly reserved an easement when they conveyed the 78.181 acre tract—that is the only way that they could have reserved an easement on the conveyed tract. Their failure to do so means that the Appellants now have no right to use the roadway and the Ginns may prohibit them from doing so.

In conclusion, the fifty-foot easement was appurtenant only to the 18 acre tract and was extinguished when the Ginns became the owners of both tracts. The contract language reserving the Meade families' right to use the roadway was simply a restatement of the law since they had a right to use the roadway located on their property as long as they owned it, regardless of whether such right was reserved. The contract language, therefore, did not create an easement appurtenant to the Meade families' remaining property, and the Meade families failed to reserve an easement when they conveyed the 78.181 acre tract. For these reasons, I dissent and would affirm the Court of Appeals.

LAMBERT, C.J., joins this dissenting opinion.

---

**7.** 25 Aᴍ. Jᴜʀ. 2ᴅ *Easements and Licenses* § 100 (2004) ("Thus, any time the party who owns an easement right acquires legal ownership of a servient tenement, the easement associated with that parcel is extinguished.").